Donald A. Diehl, Anthony J. Gall, Thomas G. Pipp and Robert Mulgado, Appellants *v.* The City of McKeesport, Appellee.

Argued May 7, 1981, before Judges MENCER, MACPHAIL and PALLADINO, sitting as a panel of three.

*Walter F. Baczkowski, Liddle and Adams,* for appellants.

*Steven F. Kessler,* City Attorney, for appellee.

OPINION BY JUDGE MACPHAIL, July 16, 1981:

Donald Diehl, Anthony J. Gall, Thomas G. Pipp, and Robert Mulgado (Appellants) appeal to this Court from an order of the Court of Common Pleas of Allegheny County dated June 12, 1980, that denied Appellants' appeal from their respective demotions within the City of McKeesport's Police Department (Department). We reverse.

The facts are uncontested. On January 1, 1976, the City of McKeesport (City) became a home rule charter municipality. On or about January 8, 1976, two of the Appellants[1] were promoted by the present mayor's predecessor to the rank of lieutenant and one[2] was promoted to the rank of detective in the Department. The fourth Appellant[3] had been promoted to the rank of detective sometime in 1971.

---

[1] Donald A. Diehl and Robert Mulgado.

[2] Anthony J. Gall.

[3] Thomas G. Pipp.

Acting pursuant to the City's Home Rule Charter (Charter)[4] the mayor proposed and the City Council adopted a Personnel Policy (Policy) by Ordinance No. 79-4 (Ordinance) dated February 21, 1979, and effective February 24, 1979. Included in the Policy were provisions for merit selection of police officers for any promotion above the rank of patrolman, written notification outlining specific charges warranting such action to any police officer who was to be reduced in rank, and the opportunity for that officer to demand a hearing on the charges before the City's Civil Service Commission (Commission).[5]

On January 28, 1980, the present mayor notified the Appellants that they were being reduced in rank to that of patrolman. No specific charges were provided and the Commission denied the Appellants' timely requests for hearings. Appellants filed a Petition for Review with the Court of Common Pleas of Allegheny County under the Local Agency Law[6] alleging that their demotions were a violation of the Policy. The lower court denied the appeal. Appellants appealed to this Court.

---

[4] Section 1602 of the Charter provides in pertinent part:
SECTION 1602. *Personnel Rules.*

The Mayor shall prepare a *uniform* set of rules to govern all matters relating to a personnel system. Such rules shall be approved by Council and shall include. . . .

. . . .

(3) *Methods for determining the merit and fitness of candidates for appointment or promotion.*

(4) *The policies and procedures regulating reduction in force and disciplinary action, including suspension and removal of employees.* (Emphasis added.)

[5] We note that the introduction of a modern merit based personnel system is a fairly common home rule charter provision. It was clearly intended by the government study commission and approved by the voters at the charter referendum election.

[6] 2 Pa. C. S. §§551-555, 751-754.

The issue before this Court is whether under the specific provisions of the Ordinance police officers who, prior to the adoption of the Ordinance, were promoted to their present rank without merit examination are entitled to the protection against arbitrary demotion afforded by the Ordinance to those who may be promoted by virtue of merit examination conducted pursuant to the Ordinance.

The City's duly proposed and adopted Policy provides in pertinent part as follows:

## I. PURPOSE

> To establish a *uniform, comprehensive system* of rules and regulations *dealing with all phases* of personnel administration *and governing all City employees.* (Emphasis added.)
>
> . . . .

## ARTICLE IX. SUSPENSIONS, REMOVALS AND REDUCTION IN RANK

> 901. Procedure—Whenever *any* police officer or fireman in the City of McKeesport is suspended for a period exceeding five (5) days, removed, or (except in the case of the Chief of Police or Fire Chief) reduced in rank, the specific charges warranting each such action shall be stated in writing by the Mayor. The charges shall be stated clearly and in sufficient detail to enable the person accused to understand the charges made against him and to answer them. (Emphasis added.)
>
> 902. Demand for Hearing—*Any* police officer or fireman aggrieved by the Mayor's actions under Section 901. [sic] Procedure may file with the Civil Service Commission a written demand for a hearing. (Emphasis added.)

Appellants argue that Sections 901 and 902 of the Policy cover *any* police officer and, therefore, they are included within the definition. The City argues, however, that after the enactment of the Ordinance adopting the Policy, the mayor continued to have the power to demote at will any police officer who had not been promoted through the merit process. We strongly disagree.

Section 1903 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1903[7] provides that words shall be construed according to their common and approved usage. "The word 'any' is generally used in the sense of 'all' or 'every.' and its meaning is most comprehensive. . . ." *Belefski Estate,* 413 Pa. 365, 375, 196 A.2d 850, 855 (1964) (citations omitted). The language of Sections 901 and 902 of the Policy is clear. The Policy contains no restrictions or limitations—*all* police officers are included. The Appellants are, therefore, clearly within the class of "any police officer."

We find the City's argument to be untenable. There is no doubt that prior to January 1, 1976, the City operated pursuant to The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§35101-39701. Further, there is no doubt that under the Code the mayor could demote police officers at will, without a hearing, provided only that the person remained a member of the police force. *Zeloyle v. Bettor,* 371 Pa. 546, 91 A.2d 901 (1952). This arbitrary power to demote inhered in the mayor by virtue of his power to appoint arbitrarily. In the instant case, the parties do not dispute that the Appellants had been legally promoted.

---

[7] The rules of statutory construction are applicable to statutes and ordinances alike. *Appeal of Neshaminy Auto Ville, Ltd.,* 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976).

Appellants do, however, dispute that they were legally demoted. In *Zeloyle,* the main issue was whether a 1951 amendment to the Code that transferred the power to appoint a police chief from the city council to the mayor also transferred the power to demote the chief who had been appointed by the city council, and was in office at the time the amendment became effective. The Pennsylvania Supreme Court held that the council's power to appoint being gone, its power to demote was likewise extinct. Our Supreme Court also held in *Zeloyle* that regulations promulgated by the city's civil service board which required a hearing by the city's council were not enforceable because at the time the regulations were adopted, city. council alone was the statutory repository for the authority to appoint and demote the police chief. Accordingly, the Court held that the civil service board could not adopt regulations which would restrict that authority. Quite obviously, the *Zeloyle* case can be distinguished from the one now before us. As we have noted, in the instant case the Policy was enacted pursuant to authority contained in the Charter.

In the same manner, we distinguish *Petrillo v. City of Farrell,* 345 Pa. 518, 29 A.2d 84 (1942), also relied upon by City. There it was held that the city council could demote a captain on the police force without a hearing pursuant to the provisions of Article XLIV of the Code, 53 P.S. §§39401-39410. Our Supreme Court held that since Section 4401 of the Code, 53 P.S. §39401 provided for examination to "any position whatever in the police department" and the examination for a patrolman was the only one taken by the captain, he could be demoted by council without benefit of the protection of the statute. Again, that is not our situation here. While it is true that Appellants did not take an examination for the positions they held prior to demotion, the specific

Ordinance with which we are now dealing, once enacted, divested both council and the mayor of the authority to promote or demote except in accordance with the provisions of the Ordinance. We hold that where the power of promotion and demotion at will has been replaced by a merit system of appointment, retention, promotion, demotion and removal, the mayor must appoint, retain, promote, demote, and remove all police officers in accordance with merit procedures therein provided. The power to demote any police officer at will in the City of McKeesport is now extinct.

Finally, City argues that the result we have reached would be a retroactive application of the Ordinance. To the contrary we are merely giving effect to the plain language of the policy and applying that language to circumstances *in praesenti.*

For the above reasons we hold that the Appellants are entitled to the same protection from arbitrary reduction in rank as those police officers who have been promoted pursuant to the merit testing procedures. We further hold that until such time there is compliance with the provisions of the Policy, the Appellants are entitled to reinstatement to their former positions with appropriate pay and benefits from the time of their demotion.

Order reversed.

### Order

And Now, this 16th day of July, 1981, the order of the Court of Common Pleas of Allegheny County in the above-captioned case is reversed and

It Is Further Ordered that Donald A. Diehl, Anthony J. Gall, Thomas G. Pipp, and Robert Mulgado be reinstated to their former positions on the police force of the City of McKeesport with the appropriate pay and benefits from the time of their demotions

568

until such time as there is compliance with the appropriate procedures of the Personnel Policy for the City of McKeesport.