The City of McKeesport, Appellant *v*. Chris Vamivakes, Leo Solomon and William Rendulic, Appellees.

Argued November 15, 1984, before Judges ROGERS, MACPHAIL and PALLADINO, sitting as a panel of three.

24

*John F. Cambest, Conway, Meyer & Cambest,* for appellant.

*Ronald P. Koerner, Gatz, Cohen, Segal & Koerner,* for appellees.

OPINION BY JUDGE MACPHAIL, February 28, 1985:

The City of McKeesport (City) appeals to this Court from an order of the Court of Common Pleas of Allegheny County granting the appeals of Chris Vamivakes, Leo Solomon and William Rendulic (Appellees) from their respective demotions within the City's Police Department. We reverse.

The City enacted a Personnel Policy (Policy) by Ordinance No. 79-4 (Ordinance) dated February 21, 1979, effective February 24, 1979, which provides for merit selection of police officers for any promotion above the rank of patrolman. With respect to suspensions, demotions and reductions in rank, the Policy entitles police officers to written notification of specific charges and a hearing before the City's Civil Service Commission (Commission).[1]

---

[1] Article IX of the Ordinance reads in pertinent part as follows: 901. Procedure—Whenever any police officer or fireman in the City of McKeesport is suspended for a period exceeding five (5) days, removed, or (except in the case of the Chief of Police or Fire Chief) reduced in, rank, the specific charges warranting each such action shall be stated in writing by the Mayor. The charges shall be stated clearly and in sufficient detail to enable the person accused to understand the charges made against him and to answer them. 902. Demand for Hearing—Any police officer or fireman aggrieved by the Mayor's actions under Section 901. [sic] Procedure may file with the Civil Service Commission a written demand for a hearing.

The mayor promoted Appellees without regard to the Policy.[2] After this Court's decision in *Diehl v. City of McKeesport*, 60 Pa. Commonwealth Ct. 561, 432 A.2d 288 (1981) (Petition for Allowance of Appeal denied November 19, 1981), where we had the same ordinance before us, the mayor notified Appellees that they were being reduced in rank to that of patrolman. No specific charges were provided. After a hearing on October 13, 1982, the Commission decided that because Appellees were not promoted in accordance with the Policy, Appellees did not come under the protections afforded by the Policy.

The Common Pleas Court of Allegheny County reversed, holding that Appellees were entitled to the same protection from arbitrary reduction in rank afforded by the Policy to those officers promoted pursuant to merit testing. The trial court reinstated Appellees to their former positions, reasoning that the mayor was estopped from taking advantage of his own wrongdoing and arguing that Appellees were not legally promoted. The City now appeals to this Court.

The issue we must decide is whether police officers promoted after the Policy was adopted in contravention of procedures enunciated in the Policy are nevertheless entitled to its protection against arbitrary demotion.

The City argues that after the enactment of the Ordinance adopting the Policy, the mayor under our

---

[2] Neither Officers Vamivakes nor Solomon, who were promoted in January of 1980 from patrolmen to detectives, were given a civil service examination. Officer Rendulic had taken a civil service examination and had been placed on a list of eligibles for the position of lieutenant. He was promoted to lieutenant in January of 1980 but nothing in the record indicates that his promotion was effected by compliance with Article VIII of the Ordinance relating to promotions.

holding in *Diehl,* was required to remove Appellees from the positions to which they were promoted. Appellees argue that although they were not promoted in accordance with the Policy, *Diehl* required the City to follow the procedures for demotion outlined in the Policy. We thus have the not altogether unique situation where both parties rely upon the same case to justify their respective positions.

The City argued in *Diehl* that after the Ordinance's enactment, the mayor continued to have the power to demote at will any police officer who had not been promoted through the merit process. We held this argument to be untenable, reasoning that:

> While . . . [the police officers] did not take an examination for the positions they held prior to demotion, the specific Ordinance with which we are now dealing, once enacted, divested both council and the mayor of the authority to promote or demote except in accordance with the provisions of the Ordinance. We hold that where the power of promotion and demotion at will has been replaced by a merit system of appointment, retention, promotion, demotion and removal, the mayor must appoint, retain, promote, demote, and remove all police officers in accordance with merit procedures therein provided. The power to demote any police officer at will in the City of McKeesport is now extinct.

60 Pa. Commonwealth Ct. at 566-67, 432 A.2d at 291.

In the case now before us, the Commission, in reaching its decision, placed much emphasis upon prior decisions of our Supreme Court. In *Detoro v. Pittston,* 344 Pa. 254, 25 A.2d 299 (1942), a policeman who had been discharged without a hearing by the city council sought reinstatement pursuant to the civil

service provisions of The Third Class City Law,[3] Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§39401-39410. The Court held that the policeman was not entitled to reinstatement unless he proved that he had acquired civil service status prior to his discharge. In *Manning v. Millbourne Borough Civil Service Commission,* 387 Pa. 176, 127 A.2d 599 (1956), a police officer was discharged for reasons he thought were invalid and in a suit in mandamus, sought to have a hearing before the borough's civil service commission. Citing the various civil service provisions in The Borough Code,[4] the Court held that since the officer was never validly employed under The Borough Code, he was not entitled to the protections of its provisions regarding a hearing prior to discharge. In *Snizaski v. Zaleski,* 410 Pa. 548, 189 A.2d 284 (1963), police and firemen discharged without a hearing sought reinstatement. Again our Supreme Court held that unless the affected police and firemen could prove that they were properly appointed under the provisions of The Third Class City Code, they could not obtain relief from the courts.

Inasmuch as the Appellees made no argument that they were lawfully promoted, the Commission felt bound to follow our highest court's decisions.

The trial judge principally relied upon *Diehl* in reaching his decision to reverse the Commission. He held that the prior decisions of the Supreme Court

---

[3] Now The Third Class City Code.

[4] Sections 1165-1190 of the Act of May 4, 1927, P.L. 519, *as amended,* added by Sections 1165-1190 of the Act of July 10, 1947, P.L. 1621, *formerly* 53 P.S. §§46165-46190, repealed by Section 3501 of the Act of February 1, 1966, P.L. (1965), 1656, *as amended,* 53 P.S. §48501. These provisions are now found in Sections 1171-1195 of the Act of February 1, 1966, P.L. (1965), 1656, *as amended,* 53 P.S. §§46171-46195.

upon which the Commission relied were factually distinguishable from this case in that they involved civil procedures long in existence before the police involved were appointed to their positions. He also noted that the cases involved discharge rather than demotions and appointments rather than promotions. Regarding the City's position, the trial judge wrote:

> Assuming the promotions were not strictly pursuant to the merit examination, we hold that the City could not assert a defense justifying the demotions at will without complying with the demotion procedures of the Policy. The Mayor was estopped from contending that the appellants were not legally promoted in 1980. To permit the Mayor to take advantage of alleged noncompliance in the promotions and to plead ignorance of the Personnel Policy requirements, particularly since the Mayor is the one who is responsible for the hiring, firing, promoting and demoting of police officers, would be unjust and unfair. It would be inimical to the integrity of the Policy and would undermine the desirable objectives it sought to achieve in enacting the Policy.

> In the instant case, clearly the appellants, if not intentionally, were otherwise misled by the City's conduct herein. The City must not take advantage of its own wrongdoing in failing to comply with the Policy, particularly since it is charged with the responsibility in our employer-employee relationships' system for the hiring, promoting, demoting, etc., of employees.

*Appeal of Chris Vamivakes, Leo Solomon and William Rendulic,* (No. SA 122 of 1983), slip. op. at 9-10. In summary, the trial judge was of the opinion that

our statement in *Diehl* that "the power to demote any police officer at will in the City of McKeesport is now extinct", was a final and reliable word on the subject. Indeed, we so intended it as to the facts then before us.

Here, however, there is a critical factual difference from that presented to us in *Diehl*. Here the officers involved were promoted in violation of the Policy. The mayor and the City correctly relied upon our language in *Diehl* regarding promotions and acted in accordance therewith. We must respectfully disagree with the learned trial judge concerning any estoppel theory acting against the City or the mayor which would, in effect, validate the invalid promotions.

To paraphrase what was said in *Detoro*,[5] in order to make it applicable to the facts now before us,

> A promotion which in its inception violates a city ordinance regarding the manner in which such promotions are to be made is illegal and against public policy and it is the duty of the administrative officers of the municipality to discontinue any illegal employment when they note its illegality. The illegality should not go unchallenged. In such a case the defense is *not waived* by the action of the representatives of the municipality. (Emphasis added.)

As was said by Judge BARRY in *Municipality of Penn Hills v. Municipality of Penn Hills Personnel Board/Civil Service Commission*, 87 Pa. Commonwealth Ct. 552, A.2d (1985), "[t]he application of the civil service laws is a two way street, *i.e.*, before one may invoke the protections afforded thereby, one must show an appointment or promotion in accordance

---

[5] 344 Pa. at 261, 25 A.2d at 303.

with the laws in effect at the time of the appointment or promotion."

Order reversed.

ORDER

The order of the Court of Common Pleas of Allegheny County, dated June 7, 1983, No. SA 122 of 1983, ordering the reinstatement of Chris Vamivakes, Leo Solomon, and William Rendulic, is hereby reversed.

Judge WILLIAMS, JR., did not participate in the decision in this case.