James Rachael, Appellant *v.* Forest Hills School District, Appellee.

Argued October 10, 1985, before Judges MACPHAIL and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*J. Douglas Wolfe,* for appellant.

*Gilbert E. Caroff,* for appellee.

OPINION BY JUDGE MACPHAIL, January 9, 1986:

James Rachael (Appellant) here appeals from an order of the Court of Common Pleas of Cambria County denying his post-trial motions which took exception to the dismissal of his complaint. We affirm.

Appellant was elected Tax Collector for Adams Township, Cambria County in the municipal election of November, 1981. On February 22, 1983, Appellant filed a civil action in assumpsit and equity challenging the validity of a resolution passed on February 11, 1981 by the Forest Hills School District (District) that

set the compensation to be paid to its tax collectors. A non-jury trial was held on February 14, 1984. On May 2, 1984, the trial court found in favor of the District and dismissed Appellant's complaint. Appellant then filed exceptions to the trial court's opinion. These exceptions were denied.

The resolution in question reads as follows:

Forest Hills School District

Real Estate Tax Collectors Commission Effective July 1, 1982

A 0.5% commission on all real estate duplicates of $19,500,000 or more assessed valuation.

A 1.0% commission on all real estate duplicates of $16,500,000 to $19,499,999 assessed valuation.

A 1.5% commission on all real estate duplicates of $13,500,000 to $16,499,999 assessed valuation.

A 2.0% commission on all real estate duplicates of $10,500,000 to $13,499,999 assessed valuation.

A 2.5% commission on all real estate duplicates of $7,500,000 to $10,499,999 assessed valuation.

A 3.0% commission on all real estate duplicates of $4,500,000 to $7,499,999 assessed valuation.

A 3.5% commission on all real estate duplicates of $1,500,000 to $4,499,999 assessed valuation.

A 4.0% commission on all real estate duplicates of $1,000,000 to $1,499,999 assessed valuation.

A 4.5% commission on all real estate duplicates of $500,000 to $999,999 assessed valuation.

A 5.0% commission on all real estate duplicates of less than $499,999 assessed valuation.

Three of Appellant's exceptions to the trial court's dismissal of his complaint dealt directly with the interpretation of the resolution by the District. The District interprets the resolution on a flat-rate basis, *i.e.*, the commission rate is calculated by taking the total assessment of real estate in any taxing district, finding the bracket in the resolution where that assessment falls and applying the corresponding commission rate to all tax collections in that particular district. Appellant avers that the resolution should be interpreted to yield a progressive commission rate. Appellant's interpretation is best represented by a table he includes in his brief which shows what would happen under his theory utilizing the current 63.1 millage rate:

| Taxes Collected on 63.1 Millage | Commission Payable on Taxes Collected |
|---|---|
| 0 to 31,549.94 (*i.e.* collectable taxes on 1st $500,000 in assessments) | 5% of amount collected [1,577.50] |
| 31,549.94 to 63,099.94 (*i.e.* collectable taxes on assessment between 500,000 & 999,999) | 1,577.50 plus 4.5% of amount collected over 31,549.94 |
| 63,099.94 to 94,649.94 | 2,997.25 plus 4% of amount over 63,099.94 |
| 94,649.94 to 283,979.94 | 4,259.25 plus 3.5% of amount over 94,649.94 |
| 283,979.94 to 473,249.94 | 10,844.75 plus 3% of amount over 283,979.94 |
| 473,249.94 to 662,549.94 | 16,563.75 plus 2.5% of amount over 473,249.94 |
| 662,549.94 to 851,849.94 | 21,296.25 plus 2% of amount over 662,549.94 |

| | |
|---|---|
| 851,849.94 to 1,041,149.94 | 25,082.25 plus 1.5% of amount over 851,849.94 |
| 1,041,149.94 to 1,230,499.94 | 27,921.75 plus 1% of amount over 1,041,149.94 |
| 1,230,499.94 plus | 29,814.75 plus .5% of amount over 1,230,499.94 |

Appellant avers that the District's interpretation of the resolution is "arbitrary and capricious" and therefore improper. He avers that his is the only interpretation which is "consistent and reasonable."

At the outset we must note that a court of equity may interfere with or limit the authority of a board of school directors to set the rate of compensation for tax collectors only where it is clearly shown that the school board has acted outside the scope of its authority[1] or

[1] The authority for the District to set the compensation for its tax collectors is derived from the Local Tax Collection Law, Section 35 of the Act of May 25, 1945, P.L. 1050, *as amended*, and Section 36.1, added by Section 2 of the Act of May 16, 1951, P.L. 314, *as amended*, 72 P.S. §§5511.35, 5511.36a. These sections read as follows:

*§5511.35  Compensation of tax collector in boroughs and townships of the second class*

The tax collector in boroughs and townships of the second class shall receive, as compensation for the collection of county, institution district, borough and township taxes, salary, wages or a commission on all such taxes to be fixed by the respective taxing authorities levying such taxes, not exceeding five per centum of the amount collected. In the case of school district taxes, the commission or compensation of the tax collector shall be determined by the board of school directors, and the total cost of such collection shall be reported annually to the Superintendent of Public Instruction, and shall be published in his report.

For the collection of county, institution district, school district, borough and township taxes, the tax collector shall be allowed by the respective taxing authorities, actual and needful expenditures for printing, postage, books, blanks and forms.

not in good faith. *Slavich v. Conemaugh Valley School District,* 39 Pa. Commonwealth Ct. 352, 395 A.2d 644 (1978). Further, the interpretation given to the resolution by the District's administrators should be given deference. This Court has said that the construction of a statute by those charged with its administration is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous. *Spicer v. Department of Public Welfare,* 58 Pa. Commonwealth Ct. 558, 428 A.2d 1008 (1981).

We will begin our analysis of the resolution by stating, contrary to the averments of Appellant, that the resolution on its face is not ambiguous. The resolution clearly was meant to be applied on a flat-rate basis. This is made clear by noting the definition of the phrase "real estate duplicate" as used in the resolution. Michael Jerome, the Cambria County Assessor, testified before the trial court that "[t]he duplicate is a ledger having all the property values *in that district* and the assessed valuation." (Emphasis added.)[2] Each district has but one duplicate. Therefore, in accordance with the plain meaning of the resolution, the value of the property noted on any particular duplicate, for any particular district, places that district's tax collector in one particular bracket.

In addition, it is significant that, in his attempt to show the resolution is ambiguous and in order to advance his interpretation, Appellant finds it necessary

---

§5511.36a *Increase or reduction of compensation*

When any taxing district or taxing authorities propose to either raise or reduce the compensation or salary for the office of an elected tax collector, such action shall be by ordinance or resolution, finally passed or adopted prior to the fifteenth day of February of the year of the municipal election.

[2] Notes of testimony of February 14, 1984, p. 25, R.R. 125a.

to reverse the order of the brackets. The ordering of the brackets in the resolution, lowest commission rate to highest commission rate, does not lend itself to an interpretation that the rate was meant to be progressive.

Assuming, *arguendo*, that the resolution is ambiguous, we reach the same result when we apply the principles embodied in Section 1921(c) of the Statutory Construction Act of 1972 (Act):[3]

> (c) *Matters considered in ascertaining intent.*—When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.

---

[3] 1 Pa. C. S. 1921(c). The Act is applicable explicitly to the interpretation of Acts of the General Assembly. Our Supreme Court has stated, however, that "[a]lthough the Act applies specifically to construction of state statutes, the principles enumerated therein are equally helpful in the interpretation of municipal ordinances." *Francis v. Corleto*, 418 Pa. 417, 426 n.10, 211 A.2d 503, 507 n.10 (1965). This Court has often stated that the rules of statutory construction are applicable to both statutes and ordinances. *Ciavarella et ux. Appeal*, 86 Pa. Commonwealth Ct. 193, 484 A.2d 420 (1984); *Cooley v. East Norriton Township*, 78 Pa. Commonwealth Ct. 11, 466 A.2d 765 (1983); *Diehl v. City of McKeesport*, 60 Pa. Commonwealth Ct. 561, 432 A.2d 288 (1981); *Appeal of Neshaminy Auto Villa Ltd.*, 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976). We have also applied the rules of statutory construction to the interpretation of a home rule charter. *Cottone v. Kulis*, 74 Pa. Commonwealth Ct. 522, 460 A.2d 880 (1983). We see no reason why the rules should not also be applied when interpretating an ambiguous school board resolution, particularly where the school board's power to pass such a statute is derived from an Act of the General Assembly.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

Under Subsection 5, we are to consider the former law. The resolution that was in effect prior to the one we deal with here had only three brackets.[4] The wording and scheme of the resolution was similar to the one we consider here. There was uncontroverted evidence presented that this earlier resolution was interpreted on a flat rate basis.[5]

Under Subsection 7, we are to consider the legislative history. The report of the District's Budget and Finance Committee details the deliberations of that committee. Among the items the committee considered was

[a] graphic showing decreases of ½% across the board to show dollar amounts of commissions based on 63½ mills on the 50% assessment.

---

[4] The resolution which was in effect from 1973 until the effective date of the resolution we are considering, reads as follows:

*Real Estate*

Duplicate of less than $2,500,000 A.V.—5% Commission

Duplicate of $2,500,000—$4,999,999 A.V.—4½% Commission

Duplicate of $5,000.00 [sic] and up A.V.—4% Commission
Defendant's Deposition Exhibit No. 21, Deposition of Thomas V. Neff, April 12, 1983.

[5] Deposition of Thomas V. Neff, April 12, 1983, pp. 20-25, R.R. 42a-47a; Defendant's Deposition Exhibits 19, 20 and 21.

*e.g. Adams Township* to 3½%
Coyle Township to 4%
Summerhill Township to 4%
South Fork Borough to 4½%
Etc. (Emphasis added.)[6]

The graph obviously represented an application of the resolution on a flat-rate basis in that it indicated the commission for the Adams Township Tax Collector to be 3½%, not some other formula. The Budget and Finance Committee decided to recommend the resolution after considering the graph and the school board passed the resolution after considering the report.

Subsection 8 instructs us to consider the administrative interpretation. As we have noted, the District's administration interprets the resolution on a flat-rate basis.

Under the Statutory Construction Act the flat-rate interpretation appears sound. Appellant avers, however, that the resolution must be interpreted in a light most favorable to the Appellant and against the District, the drafter of the resolution. Appellant cites several contract cases to support this proposition. As our Supreme Court has stated, however, the relation between a tax collector and a school district results from legislation and not from a contract, and the right of a tax collector to receive the compensation annexed to his office is legislative, not contractual. *Tarner v. Chambersburg Borough School District,* 338 Pa. 417, 12 A.2d 106 (1940). Further, this Court has stated, in dealing with a state statute, that when a provision can be interpreted to benefit either a private party or the Commonwealth, it must be presumed that the legislature intended to favor the public interest. *Rakoczy v. Jandy Coal Co., Inc.,* 26 Pa. Commonwealth Ct. 459,

---

[6] Defendant's Deposition Exhibit No. 24, Deposition of Thomas V. Neff, April 12, 1983.

363 A.2d 1338 (1976) ; Section 1922(5) of the Act, 1 Pa. C. S. §1922(5). It is clear that we must not favor the Appellant in construing the resolution, we must favor the District.

We conclude that the proper interpretation of the resolution dictates that it be applied on a flat-rate basis. Appellant argues that this is unreasonable because some of the tax collectors in districts with a lower total assessment could be paid more than he is under certain circumstances. There is no evidence of record, however, that this situation has occurred. The Appellant also argues that his commission could possibly decrease even though the total amount of taxes he collects increases. Again, there is nothing on the record to show that this has actually occurred.

Even if Appellant would be paid less than other tax collectors in the Forest Hills School District and even if his commission would decrease, that does not render the resolution invalid. On the whole, the resolution appears to equalize the commissions of the various tax collectors, although there may be an occasional aberration that seems unfair. There is no provision of any law cited by Appellant or which we could find in our research that states that a tax collector who collects more taxes is entitled to more commission salary than another tax collector who collects less. It is within the power of the school board, in the proper exercise of its legislative prerogative, to determine that different rates should be paid tax collectors based on a variety of factors incident to each tax district. *Slavich.*

Appellant's remaining exception to the trial court's dismissal of his complaint is that the trial court failed to find that the District's interpretation of the resolution would cause Appellant to take a reduction in compensation, which is statutorily prohibited by Section 36.1 of the Local Tax Collection Law.[7] That

---

[7] See footnote 1.

section requires that when a taxing district or authority raises or reduces "the compensation or salary" of a tax collector such action must be taken "by ordinance or resolution, finally passed or adopted prior to the fifteenth day of February of the year of the municipal election."

The District did comply with the requirements of the statute in passing the resolution. Appellant avers, however, that because his commission could change when tax assessments for his taxing district change, this violates the statute. We believe that the legislature requires only that a *scheme* of compensation be passed within the prescribed time limitations and that the *scheme* not be changed after "the fifteenth day of February of the year of the municipal election." Anytime compensation is based on commissions, the actual amount of money one receives could change. The statute does not preclude the use of a commission scheme and includes the disjunctive "compensation *or* salary." We believe that "compensation" as used in the statute was meant to include a commission rate scheme.

Furthermore, the purpose of the statute is to apprise candidates of the compensation the winner would receive if elected and, therefore, to enable candidates to withdraw their names from nomination and election if they believe the new compensation or salary is inadequate or unfair. *Myers v. Newtown Township School District,* 396 Pa. 542, 153 A.2d 494 (1959). The purpose of the statute was served in this case.

In closing, we would like to briefly touch on another aspect of the *Myers* case. In *Myers,* the board of school directors passed a resolution changing the tax collector's compensation from a commission to a salary basis. The amount the tax collector would receive under the new plan was much less than what he had been receiving. Nevertheless, the tax collector ran for

re-election. Our Supreme Court held that a Court lacked the power to change the compensation scheme in part because "Myers ran for and was *elected by the people* to an elective office with full knowledge of the salary it paid, and . . . Myers did not raise any question or objection to the salary until after he was elected and sworn into office as tax collector." *Myers* at 545, 153 A.2d at 496 (emphasis in original). In the case at bar, Appellant ran for election after the resolution was passed and in light of the District's interpretation of the former resolution. He claims, however, that he was not aware of the interpretation of the resolution by the District until after the election. A prospective tax collector should be held to the duty of determining what his compensation would be and withdrawing from the race if that compensation is not suitable to him.

We conclude that the trial court must be affirmed.

### ORDER

The decree of the Court of Common Pleas of Cambria County at No. 1983-465 denying Appellant's Post-trial Motions is affirmed.