William L. MCDANIEL, Individually, as the duly elected Tax Collector of Sugarcreek Borough and as class representative and Bonnie K. Sharrar, Individually, as the duly elected Tax Collector of Sandycreek Township and as class representative, Appellants

v.

## COUNTY OF VENANGO.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 2007.
Decided April 25, 2007.

Michael R. Hadley, Oil City, for appellants.

William J. Cisek, Franklin, for appellee.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

William McDaniel and Bonnie Sharrar (Tax Collectors) appeal from an order of the Court of Common Pleas of Venango County (trial court) dismissing their action against the County of Venango (County). Tax Collectors filed a class action suit seeking equitable and declaratory relief from a resolution passed by the Venango County Commissioners setting the compensation for elected tax collectors. The County responded by filing preliminary objections in the nature of a demurrer, and they were sustained. In this appeal we consider whether Tax Collectors can challenge their compensation after their election, knowing full well how they would be compensated when they ran for office. Concluding that Tax Collectors initiated their litigation too late, we affirm the trial court's dismissal of their complaint.

Tax Collectors are responsible for the collection of Venango County taxes. On

February 2, 2005, the Venango County Commissioners passed Resolution 2005–01, which reduced the compensation for Venango County tax collectors, beginning in 2006.[1] In passing this resolution, the Commissioners followed Section 36.1 of the Local Tax Collection Law,[2] which provides that resolutions that decrease or increase the compensation for tax collectors must be passed before the 15th day of February in the year of the municipal election.[3]

In response to the resolution, Appellant Sharrar, tax collector for Sandycreek Township, filed a so-called "letter of discontent" with the prothonotary's office on February 3, 2005.[4] The letter contains a hand-written notation at the bottom of the page which reads, "2/4/05—copy to Commissioners." Appellant McDaniel, tax collector for Sugarcreek Borough, filed his letter of discontent on February 15, 2005.[5] Both letters of discontent were given dock-

---

1. It provides in relevant part:
   **Changing the Compensation for Venango County Tax Collectors**
   **Whereas,** the County of Venango compensates the elected tax collectors in the various municipalities for the collection of county real estate taxes and per capita taxes; and
   **Whereas,** the elected tax collector compensation was previously set by action of the Board of Venango County Commissioners at their regular meeting on February 8, 1993; and
   **Whereas,** given the drastic cutbacks in state funding and the ever increasing burden placed on the County Government it has become necessary to decrease elected tax collector compensation;
   **Now Therefore Be It Resolved,** by the Board of Commissioners of Venango County . . . that the elected tax collectors shall be compensated as follows effective for the 2006 tax year:
   Elected tax collectors shall receive $4.00 per parcel on each tax parcel for which they collect the full amount of taxes.
   Elected tax collectors shall receive $3.00 per parcel on each tax parcel for which they do not collect the full amount of taxes. In no event shall any elected tax collector's compensation be less than $1,000 for collecting taxes on behalf of the County of Venango.
   The compensation for collection of per capita tax shall be increased from $0.25 to $0.30 per collection.
   Attachment to Tax Collectors' Complaint.

2. Act of May 25, 1945, P.L. 1050, § 36.1 *added by* the Act of May 16, 1951, P.L. 314, *as amended,* 72 P.S. § 5511.36a.

3. The "municipal election" is the election held in November. *Costello v. North Brad-*

*dock Borough,* 428 Pa. 264, 267, 237 A.2d 236, 237 (1968).

4. Appellant Sharrar's letter of discontent reads:
   To Whom It May Concern:
   It is with much dismay that I even find it necessary for myself to be typing and submitting this letter of discontent.
   I do hereby state with great dissatisfaction that **"The decision of the Venango County Commissioners made on February 2, 2005, in the matter of setting the compensation rate for the elected Tax Collectors of said county is not acceptable."**
   Let it also be known that I intend on seeking legal assistance in this matter. I believe the Commissioners to be guilty of misapplication of law. (DCED, Tax Collector Manual, 2003)
   I disagree with the presentation, lack of information, and disregard for myself as an individual that holds this elected position. I am not an employee; I do not tap into the County for insurance, unemployment, benefits, expense accounts, or retirement. My compensation has been grossly adjusted from a percentage-based commission to a meager per bill ratio, which is completely out of balance. It takes the same amount of time to collect on per capita as it does real estate tax bill. A similar statement was used by Commissioner Hutchinson to display the unfairness of how I was being paid for collecting on real estate properties that had far end differences on assessed valuations. Yet now, I feel I am being penalized for doing my job as an elected tax collector.
   (emphasis in original)

5. His letter of discontent reads:
   I am challenging the compensation level set by the commissioners for the tax collectors of Venango County. In my opinion it is inadequate.

et numbers by the prothonotary's office. Both Tax Collectors ran for, and were elected to the office of tax collector in November 2005. On January 5, 2006, both Tax Collectors filed a complaint seeking to have Resolution 2005–01 declared void because the level of compensation set by the resolution was wholly inadequate, an abuse of discretion, arbitrary and capricious, a violation of due process, a violation of equal protection and in all other ways unlawful. Tax Collectors also sought to have the court set their compensation at an acceptable and lawful level. Appellant Sharrar was sworn into office the same day that the complaint was filed, and Appellant McDaniel was sworn into office several months later on March 28, 2006.

The County filed preliminary objections. The County contended that Tax Collectors' complaint should be dismissed because Tax Collectors lacked standing to challenge the compensation for tax collectors, which had been set before Tax Collectors ran for office. They ran for office with full knowledge of how they would be compensated, if elected. Tax Collectors responded that they had standing for two reasons. First, the letters of discontent were filed before Tax Collectors became candidates, giving them standing to pursue the claim to a hearing after the election. Tax Collectors contended that the letters of discontent should be viewed as writs of summons. In the alternative, Tax Collectors claimed that they had standing because they filed

their complaint before they were sworn into office.

On May 18, 2006, the trial court sustained the preliminary objections and dismissed the case, holding that Tax Collectors lacked standing to challenge Resolution 2005–01. The trial court determined that the filing of Tax Collectors' letters of discontent were not the equivalent of a pleading, such as a writ of summons. Neither letter stated or even implied that its purpose was to commence a lawsuit, and neither letter verified that it had been served on the Commissioners. The trial court acknowledged that Tax Collectors filed their letters of discontent based on advice received from the Tax Collectors Manual [6] prepared by the Governor's Center for Local Government Services, but it concluded that "the manual is not authoritative as to how to commence a lawsuit." Trial Court Opinion at 5. The trial court also rejected Tax Collectors' argument they had standing because they filed their complaint before either Tax Collector took the oath of office. The trial court held that for Tax Collectors' complaints to be timely, they had to be filed before the election. Tax Collectors then filed the instant appeal.[7]

On appeal, Tax Collectors present one issue for our consideration. Tax Collectors argue that the trial court erred in concluding that Tax Collectors were prohibited

---

**6.** It provides in relevant part:

Compensation levels should be challenged by citizens or candidates for the office of tax collector immediately after they are set. Candidates have been advised to file a statement with the clerk of courts indicating they do not agree with the compensation level. They should subsequently seek legal assistance, either on their own or with other persons affected by the compensation level set by the taxing body.

Tax Collectors Manual at 11, Attachment to Tax Collectors' brief, Exhibit D.

**7.** In an appeal from a trial court's order sustaining preliminary objections and dismissing a complaint, our standard of review is to determine whether an error of law was committed, or an abuse of discretion occurred. *In re Estate of Bartol*, 846 A.2d 209, 213 (Pa.Cmwlth.2004). When considering the preliminary objections, we must, of course, keep in mind that they admit as true all well-pled facts and inferences reasonably deducible therefrom, but not conclusions of law. *Id.*

from challenging the reduction in compensation for the duly elected tax collectors of Venango County. Tax Collectors argue that the only authority relied upon by the trial court was not applicable because it involved a tax collector who took absolutely no action to express his discontent with a pay reduction before being sworn into office. Here, Tax Collectors filed letters of discontent prior to being elected[8] and filed their complaint prior to being sworn into office. Thus, they believe they have standing to challenge their compensation.

We turn to a review of the relevant law. As noted, Section 36.1 of the Local Tax Collection Law mandates the time for the County to enact any change to a tax collector's compensation. It states as follows:

When any taxing district or taxing authorities propose to either raise or reduce the compensation or salary for the office of an elected tax collector, such action shall be by ordinance or resolution, finally passed or adopted prior to the fifteenth day of February of the year of the municipal election.

72 P.S. § 5511.36a. The purpose of Section 36.1 is to apprise candidates of their compensation if elected. Accordingly, if candidates believe the new compensation or salary is inadequate or unfair, they may withdraw their names from nomination. *Rachael v. Forest Hills School District*, 94 Pa.Cmwlth. 130, 503 A.2d 472, 477 (1986). A candidate may challenge the new compensation, but this right is limited under the relevant precedent.

*Myers v. Newtown Township School District*, 396 Pa. 542, 153 A.2d 494 (1959) is the leading case. There, a resolution passed in March 1957[9] reduced the tax collector's salary for 1958. Myers, the

---

**8.** Tax Collectors refer to these letters as an "objection" and a "protest." Tax Collectors' Brief at 7–10. They also assert in their brief that they made protests in other forms, including making "repeated protests to the Defendants" and having a formal meeting with the County Solicitor and Chief Clerk. Tax Collectors' Brief at 8. However, the record contains no evidence of those "protests."

Before the trial court, Tax Collectors asserted that their letters should be viewed as the equivalent of a writ of summons, a recognized form of pleading. The trial court determined that the letters lacked the content of a writ of summons because they gave no indication that their purpose was to initiate litigation and, thus, could not be treated as writs of summons. The trial court also found that the letters were not served on the Commissioners. Tax Collectors have not appealed either determination.

The dissent asserts that because the letters of discontent are objections to a governmental determination, they must be heard pursuant to 42 Pa.C.S. § 708. First, this issue was not raised by Tax Collectors and is, therefore, waived. Second, this is not a case involving an error in form of objection. Tax Collectors' letters of discontent expressed dissatisfaction with the compensation set by the commission-

ers, but they did not contain the substance required to commence litigation. 42 Pa.C.S. § 708 does not excuse a party from following the Rules of Civil Procedure governing the commencement of a lawsuit just because the defendant is a government unit. Otherwise, any paper mailed to a prothonotary, even one not docketed and not served, would have to be heard by a court so long as it articulated some complaint about government. 42 Pa. C.S. § 708(a) allows a mandamus action to proceed, for example, if it was erroneously filed as a suit in equity. *See, e.g., Christman v. Township of Douglass*, 145 Pa.Cmwlth. 79, 602 A.2d 457, 458 (1992) (erroneously filed equity complaint should be transferred pursuant to 42 Pa.C.S. § 708(a) to the law side of the docket and be heard as an appeal from a governmental decision).

**9.** That resolution was passed pursuant to a prior version of 72 P.S. § 5511.36a which provided that a resolution reducing the compensation or salary for the office of tax collector was required to be finally passed or adopted "at least ten days prior to the last day fixed by law for candidates to withdraw their names from nomination previous to the day of the municipal election." Section 2 of the Act of May 16, 1951, P.L. 314, adding Section 36.1.

current tax collector, knew that the salary was going to be reduced, but nevertheless ran for the office of tax collector and was elected to the office in November 1957. After taking office, Myers filed a bill in equity contending that the annual salary was inadequate, arbitrary and unreasonable. Our Supreme Court held that Myers was barred from pursuing his claim. It explained its holding as follows:

> Moreover, a Court does not have any right or power to change Myers' compensation or salary (a) in view of [72 P.S. § 5511.36a],[10] and (b) the further fact that Myers ran for and was elected by the people to an elective office with full knowledge of the salary it paid, and (c) Myers did not raise any question or objection to the salary until after he was elected and sworn into office as a tax collector.
>
> This is not a mere question of the Board's abuse of discretion in fixing a salary or compensation. To give Myers a right to now seek additional salary is (a) unfair to the electorate, and (b) will be a precedent to open up Pandora's box and permit *many elected* officials to bring a similar post-election suit and ask the Courts for an increased salary (or compensation) when both the electorate and such official knew at the time he was a candidate for election that the law specifically provided a stipulated salary.

*Id.* at 545, 153 A.2d at 496 (emphasis in original).

■ By contrast, a candidate for tax collector who initiates litigation prior to being elected can pursue a challenge to compensation. In *Abington School District v. Yost,* 40 Pa.Cmwlth. 312, 397 A.2d 453 (1979), the school board passed a resolution in January 1977 reducing the compensation for tax collectors. Yost, an in-

cumbent tax collector who intended to be a candidate for that office in the 1977 municipal election, promptly filed a complaint on February 3, 1977. Another incumbent tax collector promptly intervened. The school board argued that they did not have standing to sue. This Court disagreed, explaining as follows:

> As incumbent tax collectors intending to seek new terms in an election, the mechanics of which was to begin within weeks after the School Board action, they clearly possessed a direct, substantial and immediate interest in the School Board's actions decimating the salaries and the responsibilities of the office. Further, in *Myers v. Newtown Township School District,* 396 Pa. 542, 153 A.2d 494 (1959), dealing directly with the subject matter of this case, the Supreme Court wrote that unless an aspiring tax collector objects to the school board's salary action before running for the office, he may never be in a position to do so.

*Id.* at 455–456.

■ Candidates for tax collector may also challenge their set compensation even if they do not initiate their lawsuit until after the primary. In *Penn–Delco School District v. Schukraft,* 95 Pa.Cmwlth. 619, 506 A.2d 956 (1986), candidates commenced litigation challenging, among other things, the reduction in tax collector salary. The school district argued that the candidates filed their complaints too late because when they did so, they had already won their respective primary elections. This Court disagreed, distinguishing *Myers* as follows:

> In that case, an incumbent tax collector had run for, and won, re-election to his office before he brought his action to

---

10. The Supreme Court explained that the taxing authorities could not change the compensation for the office of tax collector subse-

quent to the time fixed by law for candidates to withdraw their names from nomination.

restore his salary to its previous level. Since he had been victorious in the *general* election and had been *sworn into office,* the Supreme Court held that he lacked standing to challenge the amount of his office's salary. To hold otherwise, wrote the Court, would sanction a fraud upon the general electorate. . . .

We are satisfied that the facts presented here are significantly distinguished from those present in *Myers.* Here, the Appellees were only *candidates* for the offices whose salaries and duties they challenged whereas in *Myers* the challenger had already won election and was sworn into office. Rather, we are convinced that the facts here are more closely akin to those present in *Yost* . . . . In *Yost,* the challengers were incumbent tax collectors who intended to run for, but had not yet won, re-election . . .

*Id.* at 958–959 (emphasis in original) (citations omitted).

Here, Tax Collectors argue that the trial court misapplied the holding in *Myers.* Tax Collectors argue that *Myers* established a three-part test to determine whether standing exists and understand that test to require only that an objection, not litigation, be raised by the candidate before taking office.[11] The tax collector in *Myers* did nothing to express his displeasure with the reduction in compensation until after being sworn into office, when he filed his lawsuit. By contrast, Tax Collec-

tors filed letters of discontent before being elected [12] and filed their complaint prior to taking office. These facts, they claim, distinguish their case from that of the tax collector in *Myers.* Tax Collectors also argue that *Penn–Delco,* wherein we emphasized the words "sworn into office," supports their position. We disagree.

■ Tax Collectors knew in February 2005 that the compensation for tax collectors would be decreased in 2006. Although they submitted letters of discontent to the prothonotary, they did not actually commence a lawsuit. Tax Collectors then ran for and won election to the office of tax collector with full knowledge of the new salary. Although they commenced their lawsuit before taking office, this factual distinction does not alter the principles established in *Myers.*

First, we disagree that *Myers* established a three-part test for determining whether a tax collector has timely challenged the compensation set for the office. The Supreme Court noted that Myers knew the salary, ran for and was elected to office, and did not raise any question or objection to the salary until after he was elected and sworn into office. In doing so, the Supreme Court was merely reciting the specific facts of the *Myers* case. It did not state that these facts, and only these facts, must be satisfied in order for its holding to apply.

11. According to Tax Collectors, the three-part test established by *Myers* to prove inaction sufficient to sustain a demurrer is:

  1. A tax collector runs for office with full knowledge of the salary to be paid; **and**
  2. The tax collector does not raise any question or objection to the salary until after the election; **and**
  3. The tax collector is sworn into office

Tax Collectors' Brief at 9.

12. Tax Collectors suggest that the County should have filed a praecipe directing Tax Collectors to file a complaint as authorized by PA. R.C.P. No. 1037(a), if the Commissioners "were truly interested in moving [Tax Collectors'] protests to final resolution." Tax Collectors' Brief at 8, n. 2. This argument ignores the trial court's finding that the letters did not actually commence an action, as would a writ of summons, and there is no evidence that the Commissioners were ever served with either of the letters of discontent.

Second, the critical principle established in *Myers* is that a candidate may not wait until after the election results are in to initiate a litigation challenge to a term of that office, *i.e.*, the compensation. The Myers Court explained that allowing a post-election suit is unfair to the electorate and

> will be a precedent to open up Pandora's box and permit *many elected* officials to bring a similar **post-election** suit and ask the Courts for an increased salary (or compensation) when both the electorate and such official knew at the time he was a candidate for election that the law specifically provided a stipulated salary.

*Myers*, 396 Pa. at 545, 153 A.2d at 496 (emphasis in original) (bold added). In short, the central, and overriding principle that was established by the Pennsylvania Supreme Court in *Myers* is as follows: tax collectors who choose to run for office with full knowledge of the compensation for that office may not wait to see if they are elected before deciding to litigate the appropriateness of that compensation.

We agree with the trial court that tax collectors may not avoid the *Myers* result by sending a one-page letter of discontent to the prothonotary prior to the election. The complaint was similarly ineffective.[13]

By filing a complaint after their election to challenge their compensation, Tax Collectors did what has been prohibited by the holding in *Myers*. For this reason, we hold that Tax Collectors lacked standing to bring their case. The trial court did not err in sustaining the County's preliminary objections and dismissing Tax Collectors' action.[14]

Accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this 25th day of April, 2007, the order of the Court of Common Pleas of Venango County dated May 18, 2006, in the above captioned case is hereby affirmed.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's decision because William McDaniel (McDaniel) and Bonnie Sharrar (Sharrar) (collectively, Tax Collectors) properly challenged their compensation prior to their election to the position as tax collectors.

On February 2, 2005, the Venango County Commissioners passed a resolution reducing the compensation for the Venango County tax collectors which was to be-

---

**13.** We acknowledge that in filing letters of discontent, Tax Collectors were following the advice in the Tax Collectors Manual. However, the Manual also instructs individuals to seek legal assistance. The law requires the filing of a lawsuit prior to being elected to the office of tax collector, and so the filing of letters of discontent alone cannot create standing.

**14.** Tax Collectors contend that their position is aided by the case of *Miller v. School District of North Versailles Township*, 123 Pa.Super. 65, 186 A. 185 (1936). In that case, which pre-dated the Local Tax Collection Law, a tax collector was not permitted to challenge a board resolution setting compensation. The

resolution was passed in October, the tax collector was aware of the compensation and was elected and became tax collector in November, and filed a bill in equity challenging the resolution in December. The Superior Court explained that the tax collector's actions "were certainly an implied acceptance of the compensation fixed by the board. If she was dissatisfied with the compensation fixed, she could have refused to accept the duplicate, or she could have made a protest and have had [sic] the matter brought to a proper issue." *Id.* at 186. This case does not aid Tax Collectors because, by waiting until after their election to commence a lawsuit, they failed to bring the matter "to a proper issue."

come effective in 2006. Because McDaniel and Sharrar were each intending to run for the office of tax collector, in response to this resolution and following "The Tax Collectors Manual"[1] issued by the Governor's Center for Local Government Services of the Commonwealth of Pennsylvania, each filed a "letter of discontent" with the prothonotary's office on February 3, 2005, stating, among other things, their dissatisfaction with the compensation rate. Those letters of discontent were given docket numbers. In November 2005, McDaniel and Sharrar ran for and were elected to the office of tax collector. On January 5, 2006, Tax Collectors filed a class action complaint to have the resolution declared void because the level of compensation was inadequate. Venango County filed preliminary objections stating that they lacked standing because the compensation had been set before they took office. Tax Collectors argued that they filed their letters of discontent before they became candidates, that the letters of discontent should be viewed as a writ of summons, or, in the alternative, that they filed their complaint before they were sworn into office. The trial court sustained the preliminary objections finding that the Tax Collectors lacked standing because the letters of discontent were not the same as a pleading, and the Tax Collectors Manual was not authoritative on how to commence a lawsuit. The trial court also dismissed Tax Collectors' other arguments.

On appeal, the majority also dismisses Tax Collectors' arguments concluding that prior to their election, their "letters of discontent" were insufficient to challenge the compensation because they did not actually commence a lawsuit. Further, once they were elected, although not sworn into office, they could not file a complaint regarding their compensation. While I agree with the majority that Tax Collectors could not properly file a complaint after they had been elected, see e.g., Myers v. Newtown Township School District, 396 Pa. 542, 153 A.2d 494 (1959),[2] I disagree that the filing of their "letters of discontent" improperly challenged the salary reduction.

42 Pa.C.S. § 708, titled "Improvident administrative appeals and other matters," provides, in relevant part:[3]

> Compensation levels should be challenged by citizens or candidates for the office of tax collector immediately after they are set. *Candidates have been advised to file a statement with the clerk of courts indicating they do not agree with the compensation level.* They should subsequently seek legal assistance, either on their own or with other persons affected by the compensation level set by the taxing body. (Emphasis and bold added.)

(Tax Collectors Manual at 11.)

---

1. The Tax Collector Manuel provides:
   **Challenging Compensation Level**
   While the legislature has given taxing districts the power to set the tax collector's compensation, this power is not absolute. Courts can intervene in cases of abuse of discretion. The pubic interest is affected whether the collector's compensation is grossly excessive or entirely inadequate; both constitute capricious action on the part of the taxing body. Courts can both raise and lower compensation levels set by the taxing districts.
   The courts can intervene in setting the tax collector's salary where the governing body is guilty of a misapplication of law, a clear abuse of discretion or arbitrary and capricious action resulting in an unlawful expenditure of public funds. Intervention is not warranted by a mere difference in opinion on the judgment exercised by the taxing body.

2. That case is slightly different factually because there, the candidate won his election for tax collector, was sworn in and then filed his complaint regarding the reduction of salary. Our Supreme Court held that Myers was barred from pursing his claim after he had been elected and sworn in.

(a) General rule.—No objection to a governmental determination shall be defeated by reason of error in the form of the objection or the office of clerk of court in which the objection is filed.

(b) Appeals.—If an appeal is improvidently taken to a court under any provision of law from the determination of a government unit where the proper mode of relief is an action in the nature of equity, mandamus, prohibition, quo warranto or otherwise, this alone shall not be a ground for dismissal, but the papers whereon the appeal was taken shall be regarded and acted on as a complaint or other proper process commenced against the government unit or the persons for the time being conducting its affairs and as if filed at the time the appeal was taken.

Because this provision requires that an objection to a governmental determination, no matter whether the "form" of the objection is proper or not, must be heard, I would vacate the trial court's order and remand to make a determination as to whether the level of their compensation set by the County was an abuse of discretion.[4]

Accordingly, I respectfully dissent.

---

3. The provision applies to all courts of this Commonwealth, including the courts of common pleas when sitting as appellate courts. 42 Pa.C.S. § 701.

4. The majority responds to the dissent first by stating that it is based on an issue not raised. The issue in this case is whether the Tax Collectors filed a challenge before their election to the level of compensation set by the Venango County Commissioners. The Tax Collectors' contend that the "letter of discontent" acted as a challenge filed before the election. While Tax Collectors admittedly did not mention 42 Pa.C.S. § 708 in their brief, that was not a failure to raise an issue but a failure of raising the correct rationale. Even if raised, the majority goes on to say that the "letter of discontent" does not provide the substance needed to challenge the appeal and does not provide an excuse not to follow the Rules of Civil Procedure. By ignoring that provision's mandate that "no objection to a governmental determination shall be defeated by reason of error in the form of the objection," the majority is essentially repealing this provision, ignoring that it was enacted to prevent some technical deficiency from taking away the right of citizens to have the complaints against the government redressed.