Joseph PILCHESKY, Appellant

v.

**REDEVELOPMENT AUTHORITY OF THE CITY OF SCRANTON.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 2007.

Decided Jan. 29, 2008.

Joseph Pilchesky, appellant, pro se.

Carl J. Greco, Scranton, for appellee.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Joseph Pilchesky appeals from an Order of the Court of Common Pleas of Lackawanna County (trial court) which granted the preliminary objections filed by the Redevelopment Authority of the City of Scranton (Authority) in the form of a demurrer relating to the issue of standing and dismissed Pilchesky's complaint. We reverse.

On December 20, 2005, Pilchesky filed an action for declaratory judgment against the Authority alleging that the transfer of the South Side Sports Complex (Complex) to the University of Scranton (University) was illegal. On February 22, 2006, Pilchesky filed an amended complaint.

Pilchesky alleged in the complaint that the 10.8 acre Complex "was taken pursuant to the Urban Renewal Plan of the Redevelopment Authority of the City of

Scranton, South Side Flats Project Renewal R–6, which Plan designated the parcel for use as a Public Park forever and not revocable." (Complaint at ¶4.) In 1977, the Complex's development was completed through the use of the Federal Office of Housing and Urban Development (HUD) funding, is commonly referred to as Project 70 funds. Also in 1977, City Council passed a resolution formally accepting the Complex as areas dedicated to sports and recreation for public use. The resolution formally named the baseball, softball and basketball facilities within the Complex.

Since its development, Pilchesky maintains that the Complex was used daily by residents of the City, including himself, for recreational activities. Pilchesky claims that the Complex was maintained, in part, with taxpayer money.

In December 2002, City Council passed an ordinance which authorized the mayor and other City officials to transfer the Complex to the Authority. On July 7, 2003, a memorandum of understanding was entered into between the University and the Authority which outlined the terms of sale of the Complex to the University.

On December 23, 2003, the governor signed Senate Bill 850 into law and such is known as Act 52 of 2003. Act 52 removed the restrictions relating to the sale of property which were imposed due to the receipt of funds through the Common-

wealth pursuant to the Project 70 Land Acquisition and Borrowing Act.[1] Senate Bill 850 removed the Project 70 funding restrictions and transfers on the land. Thereafter, on November 15, 2006 the Authority transferred the deed to the Complex to the Authority.

In his complaint, Pilchesky maintains that despite removing the Project 70 restrictions, the transfer of the Complex to the University is still subject to the "durable and static protection afforded to the formerly accepted dedicated property known as the South Side Sports Complex by the common law well known as the 'Public Trust Doctrine of 1915.'" (Complaint at ¶23.)

The Authority, in response to the complaint, filed preliminary objections. Thereafter, the trial court granted the Authority's preliminary objections in the form of a demurrer relating to the issue of standing and dismissed the complaint. The trial court determined that Pilchesky did not have standing based on his status as a taxpayer, in accordance with the standards set forth in *In re Biester*, 487 Pa. 438, 409 A.2d 848 (1979). This appeal followed.

█ On appeal, Pilchesky argues that the trial court erred in determining that he does not have standing. Pilchesky claims that this case involves a challenge to the improper sale and inconsistent use of a public trust property, specifically, a for-

1. Act 52 provides in pertinent part:
   Section 1.
   (a) Authorization.—Pursuant to the requirements of section 20(b) of the act of June 22, 1964 ... known as the Project 70 Land Acquisition and Borrowing Act, the General Assembly hereby authorizes the release of Project 70 restrictions and transfer of the lands owned by the City of Scranton which are more particularly described in subsection (c) to the Redevelopment Authority of the City of Scranton and the sale

of said lands ... to the University of Scranton....
   (b) Freedom of restrictions. The lands described in subsection (c) shall be free of restrictions on use and alienation imposed by the Project 70 Land Acquisition and Borrowing Act upon conveyance of said lands by the City of Scranton to the Redevelopment Authority of the City of Scranton and the subsequent conveyance by the Redevelopment Authority of the City of Scranton to the University of Scranton.

mally accepted dedicated public park and that he has standing under the public trust doctrine. Pilchesky cites to *Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania,* 251 Pa. 115, 96 A. 123 (1915) and *White v. Township of Upper St. Clair,* 799 A.2d 188 (Pa.Cmwlth.2002).

In *Philadelphia Museums,* the City enacted ordinances dedicating land for gardens and parks which were to be forever open to and used by the public. Museums were thereafter built on the land. The City then repealed the ordinances in order to convey the lands to the University, subject to an easement on behalf of the museums. The Court determined that taxpayers and citizens had standing to bring a suit to challenge the sale of the property to the University.

As to standing, the Court stated the following:

> if there was an absolute dedication of the land to public purposes, under the various ordinances above referred to, and the city has since that time appropriated money for the care, maintenance and improvement of at least portions of the land in question, every citizen and taxpayer has an interest, not only by virtue of his being one of the public to whom the property has been donated but also by virtue of his contribution as a taxpayer....

In *White,* residents of the Township challenged the construction of a communication tower in a public park. The park had been conveyed to the Township by the County under a deed that limited the use of the property to recreation, conservation and historic purposes. On appeal to this court, one of the issues addressed was whether the residents and taxpayers of the Township had standing to challenge the use of the park for purposes other than those specified in the deed. Although the

trial court determined that the residents and taxpayers did not have standing, this court reversed.

This court observed that the "deed provided that the conveyance to the Township was made 'so long as the property described below is used for recreation, conservation and historical purposes as defined in the Project 70 Land Acquisition and Borrowing Act....'" *White,* 799 A.2d at 192. In determining whether the residents and taxpayers had standing, this court observed that "[t]he standing analysis is different in cases where citizens seek to protect a park, a town square or other land dedicated to a particular public purpose from degradation or intrusion by an inconsistent public or private use. It is that body of case law that provides the appropriate authority in this case." Id. at 193. (Emphasis added.)

With regard to dedication of real property, this court observed in *White* that there must be both an offer and acceptance and, once that is complete, dedication is irrevocable. Further, the Township's obligation to uphold the dedication is absolute. In *White,* the dedication of the park was evidenced by the restrictions in the deed and the terms of the Township's Comprehensive Plan of 1995, which described the park as natural open space.

As to whether the taxpayers and residents had standing, this court considered *Philadelphia Museums* and *Payne v. Kassab,* 11 Pa.Cmwlth. 14, 312 A.2d 86 (1973), which also involved dedicated property. This court then concluded that the residents in *White* had standing to pursue the claim that the use of the park for a communication tower was not consistent with the terms of the dedication as set forth in the deed.

In this case, as previously stated, Pilchesky alleged in his complaint that the 10.8

acre Complex "was taken pursuant to the Urban Renewal Plan of the Redevelopment Authority of the City of Scranton, South Side Flats Project Renewal R–6, which Plan designated the parcel for use as a Public Park forever and not revocable." (Complaint at ¶ 4.) Thereafter, in 1977, City Council passed a resolution formally accepting the Complex as areas dedicated to sports and recreation for public use. The resolution formally named the baseball, softball and basketball facilities within the Complex. In addition, the Complex had been maintained, in part, with taxpayer money.

Here, like *White* and Philadelphia Museums, there was an offer and acceptance of real property, resulting in an irrevocable dedication of the Complex. Thus, Pilchesky, as a resident and taxpayer, has standing to pursue the claim that sale of the Complex is not consistent with the terms of the dedication, which designated the parcel for use as a public park forever and not revocable, and the ordinance which formally accepted the Complex as areas dedicated to sports and recreation for public use.

We observe that in determining that Pilchesky did not have standing, the trial court concluded that Pilchesky failed to meet the first requirement set forth in *In re Biester*. The five requirements for achieving taxpayer status according to *In re Biester* are as follows:

1. the governmental action would otherwise go unchallenged;
2. those directly and immediately affected by the complained of matter are beneficially affected and not inclined to challenge the action;
3. judicial relief is appropriate;
4. redress through other channels is unavailable; and

5. no other persons are better situated to assert the claim.

*Pittsburgh Palisades Park, LLC v. Commonwealth,* 585 Pa. 196, 207, 888 A.2d 655, 662 (2005). (Citation omitted.)

As to the first requirement, the trial court found that Pilchesky had not shown that the governmental action would go unchallenged. Specifically, a prior action also challenged the sale and transfer of the Complex. *Vutnoski v. Redevelopment Authority of the City of Scranton,* 941 A.2d 54 (2006). In that case, Vutnoski alleged that any transfer of the Complex by the Authority, absent procedural safeguards inherent in what is commonly referred to as the Donated or Dedicated Property Act[2], violates that Act, that the City did not empower the Authority to sell or convey the property and that the Authority did not follow its own procedures in conveying the property. The trial court granted the motion for judgment on the pleadings filed by the Authority and on appeal this court affirmed.

We note, as does Pilchesky, that in *Vutnoski* standing was not an issue, and that case involved the Donated or Dedicated Property Act, whereas this case involves the public trust doctrine. Thus, whether sale of the Complex violates the public trust doctrine has not been challenged. Moreover, this case, unlike *In re Biester* and *Pittsburgh Palisades Park,* involves dedicated property and as previously stated, "[t]he standing analysis is different in cases where citizens seek to protect a park, a town square or other land dedicated to a particular public purpose from degradation or intrusion by an inconsistent public or private use." *White,* 799 A.2d at 193.

2. Act of December 15, 1959, P.L. 1722, 53 P.S. § 3381–3386.

Finally, we address Authority's claims that Pilchesky has failed to comply with certain requirements of the Pennsylvania Rules of Appellate Procedure. Specifically, Authority maintains that Pilchesky did not timely file and serve a designation of the parts of the record he intended to produce, that he failed to file a brief statement of issues which he intended to present for review, erred in numbering the pages of the reproduced record, failed to arrange the table of citations in alphabetical order, and failed to include the name of the judge whose determination is under review. Although defects are present, they are not of such magnitude to have precluded effective exercise of appellate review. Thus, we decline Authority's request to dismiss the case.

In accordance with the above, the decision of the trial court is reversed and the case is remanded for further proceedings. Jurisdiction relinquished.

### ORDER

Now, January 29, 2008, the Order of the Court of Common Pleas of Lackawanna County, in the above-captioned matter, is reversed and remanded for further proceedings.

Jurisdiction relinquished.