# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia J. Kabel              :
                                  :
          v.             :     No. 1037 C.D. 2019
                                  :     Argued:  May 11, 2020
Manheim Township School District,   :
                   Appellant    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER              FILED: July 6, 2020

Manheim Township School District (School District) appeals from a July 23, 2019 Order (Final Order) of the Court of Common Pleas of Lancaster County (trial court) granting Patricia J. Kabel's (Tax Collector) request for declaratory and injunctive relief to declare her right to collect real estate taxes on School District's behalf and receive reasonable compensation for carrying out that duty.  School District asserts the trial court erred as a matter of law and abused its discretion in determining Tax Collector has standing and a valid cause of action, ordering School District to set a reasonable compensation for Tax Collector, and invalidating two provisions of School District's 2018 Resolution Establishing Policies and Procedures for Elected Tax Collectors (2018 Resolution).  After careful review, we affirm.

## I. Background

Tax Collector is the current tax collector for Manheim Township (Township). Tax Collector was first elected to office in 2013 and is currently serving a term that began in January 2018 and ends in December 2021. (Trial Court Findings of Fact (FOF) ¶ 1.) Tax Collector has collected Township and county taxes since she was first elected. (*Id.* ¶ 30.) Tax Collector's office is governed by the Local Tax Collection Law[1] (LTCL), as well as The First Class Township Code,[2] which provides that a tax collector "shall collect all county, institution district, township, school and other taxes levied within such townships by authorities authorized to levy taxes." Section 801-B of the LTCL, 53 P.S. § 55801-B.[3] School District, which is solely comprised of the Township, is a political subdivision and taxing district under the LTCL that imposes real estate tax pursuant to the Public School Code of 1949.[4] (FOF ¶¶ 3-5.) Since at least 1997, School District, by itself or through its designee, has collected the real estate taxes it imposes. (*Id.* ¶ 6.) Taxpayers were able to remit taxes to School District through direct payment, electronic payment, or School District's lockbox system.

### A. First Complaint & 2018 Resolution

On November 6, 2017, the day before Tax Collector's election to her current term, Tax Collector filed a complaint with the trial court seeking declaratory and injunctive relief against School District. Tax Collector sought a declaration as to her right to collect taxes on behalf of School District and "a reasonable rate of compensation commensurate with the duties of the office . . . ." (*Id.* ¶ 7.) School

---

[1] Act of May 25, 1945, P.L. 1050, *as amended*, 72 P.S. §§ 5511.1–5511.42.
[2] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101–58502.
[3] Section 801-B was added by the Act of October 24, 2012, P.L. 1478.
[4] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101–27-2702.

District filed an Answer and New Matter, asserting Tax Collector lacked standing. (Reproduced Record (R.R.) at 20a-22a.) School District further asserted that it had adopted by resolution in 1997 a compensation rate for tax collectors of $0.15 per tax bill collected and, pursuant to Section 36.1 of the LTCL,[5] Tax Collector could only challenge that compensation prior to the date she first chose to run for office or was elected to office. Tax Collector filed a reply, denying these allegations. School District moved for expedited discovery, which the trial court granted by order dated May 9, 2018, ordering expedited discovery, submission of briefs, and an emergency hearing. (*Id.* at 32a.)

While expedited discovery was ongoing, School District passed the 2018 Resolution. The purpose of the 2018 Resolution, as described therein, was to provide options for School District to assist an elected tax collector in executing statutory duties; distinguish between the tax collector's statutory duties and School District's duties; establish policies and procedures for the collection of taxes to maximize School District's revenues and interest earnings; and "ensure all public tax funds are adequately safeguarded, properly accounted for, and promptly deposited in secure School District bank accounts." (2018 Resolution Background, R.R. at 132a.) The 2018 Resolution sets forth qualifications and minimum legal requirements for tax collectors. Under Section 9 of the 2018 Resolution, the tax collector is to "direct all taxpayer inquiries concerning School District tax to the School District's Business Office," consistent with the "long[]standing practice and the fact that [t]he [LTCL] does not require a tax collector to provide customer

---

[5] Section 36.1 provides that when a taxing authority "propose[s] to either raise or reduce the compensation or salary for the office of an elected tax collector, such action shall be by ordinance or resolution, finally passed or adopted prior to the fifteenth day of February of the year of the municipal election." Added by the Act of May 16, 1951, P.L. 314, 72 P.S. § 5511.36a.

3

service." (2018 Resolution ¶ 9, R.R. at 133a.) The 2018 Resolution also sets forth in Section 22 that "School District, not the tax collector, will provide certifications as to taxes due or paid," for various reasons, including that "nothing in the [LTCL] states that providing certifications is a statutory obligation of elected tax collectors." (2018 Resolution ¶ 22, R.R. at 136a.)

Also during expedited discovery, the parties conducted depositions of Tax Collector and School District's Chief Operating Officer (School District COO). The parties submitted briefs in support of their respective positions, and by Order dated June 8, 2018, the trial court directed that, until further order of the court, Tax Collector would collect the 2018 real estate taxes on behalf of School District "in compliance with all terms and conditions of the [2018 Resolution.]" (June 8, 2018 trial court order, R.R. at 140a.) The trial court further provided that Tax Collector "shall provide the bond she is required to maintain under [t]he [LTCL]," and that she would be "compensated at a rate of $0.15 per tax bill." (June 8, 2018 trial court order, R.R. at 141a.) Finally, the order provided that "[i]n this litigation, [School] District shall not challenge [Tax Collector]'s legal right to collect [School] District's taxes." (June 8, 2018 trial court order, R.R. at 143a.)

## B. Second Complaint

On June 15, 2018, Tax Collector filed a second complaint, challenging the 2018 Resolution. Tax Collector averred that various procedures set forth in the 2018 Resolution "impermissibly interfere[d] with [Tax Collector's] office." (Second Complaint, ¶ 14.) Relevant here, Tax Collector challenged Section 9 of the 2018 Resolution, "[p]urporting to deprive the [T]ax [C]ollector of the right to provide customer service to taxpayers," and Section 22 of the 2018 Resolution, "[p]urporting to prohibit the [T]ax [C]ollector and permit the [School] District's administrative

4

offices to issue tax certifications."[6] (*Id.* ¶ 14(b), (e).) Tax Collector requested an order declaring that the 2018 Resolution interferes with Tax Collector's ability to perform the duties of her office and is invalid, and enjoining School District from enforcing the 2018 Resolution. School District filed an Answer and New Matter, denying Tax Collector's claims and asserting nearly the same new matter as it had asserted in response to the first complaint. Tax Collector filed a reply denying the New Matter.

Tax collection began after Tax Collector filed the second complaint and, shortly thereafter, School District petitioned the trial court for emergency injunctive relief. School District asserted in its petition for emergency injunctive relief that Tax Collector had not obtained the requisite bond for collection of School District's taxes by the dates set forth in either Section 4 of the LTCL, 72 P.S. § 5511.4, the 2018 Resolution, or the trial court's June 8, 2018 order. Because of this, School District asserted Tax Collector was unable to collect School District's taxes, so Tax Collector was directing taxpayers to School District's administrative office to pay their taxes. School District asked the trial court to enjoin Tax Collector from collecting School District's taxes. After a conference call with counsel, the trial court granted School District's petition for emergency injunctive relief by order dated July 2, 2018, enjoining Tax Collector from accepting payments on behalf of School District and directing her cooperation with School District to facilitate School District's collection of the taxes. The trial court entered the order without

---

[6] Tax Collector also challenged provisions of the 2018 Resolution that gave School District access to Tax Collector's accounts and books, required the daily automatic sweep of funds collected by Tax Collector to School District's bank account, and established penalties for untimely filed reports or payment of funds by Tax Collector. However, because Tax Collector dropped some of these challenges before the trial court, we will only discuss the trial court's findings and conclusions that are relevant to this appeal.

5

prejudice in order to allow Tax Collector to request a modification in the event she obtained a bond in the requisite amount. (R.R. at 191a-92a.)

Following this, at the parties' request, the trial court consolidated the first complaint and second complaint. School District then filed its Motion for Summary Judgment.

### C. Motion for Summary Judgment

School District asserted that it was entitled to summary judgment because Tax Collector did not have standing or a viable cause of action. Because Tax Collector had never actually collected School District's taxes and is presently enjoined from doing so pursuant to the trial court's order of July 2, 2018, School District contended Tax Collector was not aggrieved and lacked standing. Moreover, School District asserted, even if Tax Collector had standing, she was not entitled to the relief of ordering School District to pay her a reasonable rate of compensation or invalidating the 2018 Resolution. Tax Collector replied that School District was not entitled to summary judgment because there were material facts in dispute. (*Id.* at 392a.) Further, Tax Collector contended that School District was not entitled to summary judgment as a matter of law because Tax Collector, who filed suit prior to her most recent election, has standing and has alleged viable causes of action.

The trial court denied School District's Motion for Summary Judgment (Summary Judgment Order), determining that Tax Collector had a substantial, direct, and immediate interest in the litigation. Noting that the immediacy requirement is the most difficult requirement to meet, the trial court explained that the inquiry for that requirement centers on whether the party's interest is "within the zone of interests sought to be protected by the statute," and "where the causal connection is not remote or speculative." (Summary Judgment Opinion (Op.) at 10

6

(quotations omitted).) Because Tax Collector has a unique interest in a tax collector's compensation and demonstrated that a low compensation rate would harm her, the trial court determined Tax Collector's interest was substantial and direct. The trial court further determined that Tax Collector's "interest is not conjectural or hypothetical," as she is "among the class of persons entitled to assert an interest in the [LTCL]." (*Id.* at 13.)

The trial court disagreed with School District's assertion that Tax Collector lacks standing because she does not presently have the necessary bond. The trial court distinguished this from *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 662 (Pa. 2005), where the Supreme Court determined that the petitioners, who sought to develop a gaming facility under the Pennsylvania Race Horse Development and Gaming Act[7] (Gaming Act), did not have standing because they had not yet received a license. Unlike in *Pittsburgh Palisades*, the trial court reasoned, Tax Collector's interest was not speculative, as she is already elected to her position and is presently collecting county and township taxes. Further, the trial court explained that it was consistent with precedent that tax collectors who initiate litigation prior to being elected have standing to challenge compensation. (Summary Judgment Op. at at 15-16 (citing *Baker v. Cent. Cambria Sch. Dist.*, 24 A.3d 488 (Pa. Cmwlth. 2011); *McDaniel v. County of Venango*, 921 A.2d 1265 (Pa. Cmwlth. 2007); *Abington Sch. Dist. v. Yost*, 397 A.2d 453 (Pa. Cmwlth. 1979)).). The trial court explained "there is a difference between whether [Tax Collector] will be able to successfully execute the duties of her office as tax collector for the [School] District and whether [Tax Collector] has standing to challenge the [School] District's compensation for elected tax collectors." (*Id.* at 16.) Tax Collector's present

---

[7] 4 Pa.C.S. §§ 1101–1904.

inability to obtain a bond and collect taxes does not preclude her from having standing, the trial court concluded. Finally, the trial court determined that there were outstanding issues of material fact precluding summary judgment in School District's favor as to Tax Collector's other claims. Accordingly, the trial court denied the Motion for Summary Judgment and ordered a hearing on Tax Collector's request for injunctive and declaratory relief.

*D. Hearing*

A hearing before the trial court was conducted on April 26, 2019, at which Tax Collector and the president of the Pennsylvania State Tax Collectors Association (PSTCA President) testified on behalf of Tax Collector. School District COO testified on behalf of School District.

Tax Collector testified as to the duties of her office, the time she allocates to those duties, and the money expended to carry out the duties of her office presently, as well as the increased workload that would result from collecting School District's taxes. Tax Collector further testified as to her understanding of the challenged provisions of the 2018 Resolution and how Sections 9 and 22 of the 2018 Resolution, relating to customer service and tax certifications, respectively, impeded her ability to fulfill the duties of her elected office. PSTCA President testified as to her experience as an elected tax collector and her knowledge regarding what duties the elected office entails. Finally, School District COO testified about School District's tax software, School District's history of providing customer service, how provisions of the 2018 Resolution would operate, and how School District issued tax certifications.

8

*E. Trial Court's Findings of Fact and Conclusions of Law*

Based on the testimony, the trial court made the following findings of fact. Since at least 1997, School District has collected taxes. Tax Collector filed her first complaint on November 6, 2017, "the eve of her re-election as tax collector, as opposed to doing so f[a]rther in advance," which "deprived the electorate of the opportunity to make an informed decision as to whether it wished to retain [Tax Collector]." (FOF ¶ 8.)

As it relates to School District's adoption of a rate of compensation for the tax collector, the trial court made the following findings. School District's Board voted on January 16, 1997, on a motion: "to set the compensation for the [t]ax [c]ollector at a rate of $0.15 per bill collected to be effective January 1, 1998. (Attachment O)." (FOF ¶ 23 (citation omitted).) Attachment O was a reference to a memorandum provided to the Board, stating that county school districts were "interested in having another agency collect taxes, generate data on individual taxes collected by district and download that information to district computers, all for a fee of $0.15/bill collected, thus our recommended rate." (*Id.* ¶¶ 24-26 (citation omitted).) No other documents outside of these "establish, or purport to establish, the current compensation rate for the office of the tax collector." (*Id.* ¶ 27.)

With regard to Tax Collector's duties, the trial court made the following findings based upon the testimony given at the hearing. "[T]he Township has approximately 14,400 taxable parcels," and Tax Collector has collected the taxes on these parcels for the Township since her election to office in 2013. (*Id.* ¶ 31.) Because School District is entirely comprised of the Township, Tax Collector collects county and Township taxes for all of the parcels within the district. (*Id.* ¶¶ 30-31.) Pursuant to Tax Collector's spreadsheet of activities performed in her

position, Tax Collector estimates spending 1732 hours performing duties for the collection of Township and county taxes, approximately 55% of which is customer service related. Tax Collector spends hundreds of hours in her office in order to be available to the public, provide customer service, and perform other tax collection related duties. Tax Collector expends approximately $11,918.14 in expenses for the collection of county and Township taxes and is paid approximately $19,800.00 by the Township and county for the collection of those taxes. (*Id.* ¶¶ 34-35.)

If Tax Collector was to collect School District taxes for the 14,400 parcels in the district, which would require accepting some installment payments, at the rate of $0.15 per bill, she would be paid approximately $1.25 per hour. (*Id.* ¶ 38.) The collection of School District taxes would also necessitate an increase in Tax Collector's expenses. In Tax Collector's opinion, customer service is a requisite duty of her office, as she "answer[s] to the people," in order "to make them feel comfortable about what [we're] doing with their taxes," and to answer questions and explain tax bills. (*Id.* ¶ 44 (alterations in original) (citation omitted).) Both School District and Tax Collector are able to provide customer service and School District typically has, with no complaints. (*Id.* ¶¶ 49-51.) Tax Collector also issues tax certifications for the county and the Township, which is a duty of her elected office and which she is "uniquely situated" to perform. (*Id.* ¶¶ 57-59.) However, if Tax Collector was currently asked to issue a certification going back over five years, she would be unable to provide that. (*Id.* ¶ 90.)

Per PSTCA President's testimony, customer service and tax certifications are duties commensurate with the elected office. In PSTCA President's experience, over half of the time she spends carrying out the duties of her office consists of customer service activities, which "is an integral part of [a] tax collector's job." (*Id.*

10

¶ 74 (citation omitted).) Further, PSTCA President is "unaware of any tax collector who collects taxes for a given taxing district but does not issue tax certifications for that district," as issuance of tax certification is an integral duty of a tax collector. (*Id.* ¶ 75.) Per School District's COO, School District receives tax certification requests that span many years. (*Id.* ¶ 91.)

Based upon these findings, the trial court made the following conclusions of law. The General Assembly has codified its intent that a single tax collector collect county, township, borough, and school taxes. The LTCL provides school districts with the authority and discretion to establish and amend compensation rates for elected tax collectors, but courts can intervene where there is an abuse of discretion. (Conclusion of Law (COL) ¶¶ 5, 7, 10.) Based upon the Supreme Court's opinion in *Telly v. Pennridge School District Board of School Directors*, 53 A.3d 705 (Pa. 2012), compensation rates that are "so low as to deprive a tax collector of the ability to perform the duties of the[] elected position render[] a resolution void." (COL ¶ 12.) School District's action in 1997 to adopt a $0.15 per bill rate of compensation was not a resolution, as required by Section 36.1 of the LTCL, 72 P.S. § 5511.36a, because it was not a formal act to establish reasonable compensation but a provision to facilitate using an outside agency for tax collection. (COL ¶¶ 21, 28 (quoting *Public Opinion v. Chambersburg Area Sch. Dist.*, 654 A.2d 284, 287 (Pa. Cmwlth. 1995)).) To the extent School District's action in 1997 could be considered a resolution, the trial court found the action "null and void as the compensation rate set forth therein is so low as to deprive a tax collector of the ability to perform the duties of the elected position." (*Id.* ¶ 30.)

The trial court concluded that Section 9 of the 2018 Resolution prohibits Tax Collector from providing customer service to taxpayers and customer service is

11

necessary and "inextricably intertwined with the express statutory duties of the office set forth in the LTCL." (*Id.* ¶¶ 38, 40.) Additionally, the trial court determined that Section 22 of the 2018 Resolution prohibits Tax Collector from issuing tax certifications and that "issuance of tax certifications is a duty commensurate with the responsibilities of the entity collecting taxes." (*Id.* ¶¶ 49-50.) However, nothing in the findings of fact or conclusions of law "precludes the [School] District from issuing tax certifications for those years it collected taxes and the elected tax collector issuing tax certifications for those years the tax collector collects taxes." (*Id.* ¶ 55.) Last, the trial court concluded that the invalidation of Sections 9 and 22 of the 2018 Resolution did not invalidate the 2018 Resolution on the whole.

Accordingly, the trial court entered its Final Order, which provided that, consistent with the Summary Judgment Order, Tax Collector has standing. The trial court also declared that Tax Collector has the "sole right and duty to collect taxes" on School District's behalf. (Final Order ¶ 2.) Additionally, the trial court declared that School District did not adopt a valid resolution in 1997 setting the compensation rate and, even if it had, the rate was null and void because it was so low as to deprive the tax collector of the ability to perform essential duties of the position. The trial court invalidated Sections 9 and 22 of the 2018 Resolution and enjoined School District from enforcing them. Finally, the trial court ordered:

> Insofar as [c]ourt . . . enjoined the . . . School District from implementing the compensation rate of $0.15 as not having been properly adopted and has further declared that said rate is not reasonable, it is now incumbent upon the . . . School District, pursuant to the [LTCL], . . . to set a reasonable rate of compensation consistent with existing case law and these Findings of Fact and Conclusions of Law that enables an elected tax collector to perform the duties of the office.

(Final Order.)[8]

School District appealed[9] and, at the trial court's direction, filed its statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). The trial court issued its opinion pursuant to Rule 1925(a), reiterating its reasoning set forth in the Summary Judgment Order and Final Order.

Before this Court, School District contends that the trial court erred or abused its discretion in concluding Tax Collector has standing; in determining that Tax Collector raised a viable cause of action; in directing School District to adopt a new compensation rate; and in invalidating Sections 9 and 22 of the 2018 resolution.[10]

## II. Controlling Law

Before turning to the parties' arguments, it is necessary to understand the governing statutory requirements and case law. The LTCL sets forth the duties of office of tax collector. Under the LTCL, tax collectors are required to open an account for the purpose of depositing taxes collected, Section 5.2 of the LTCL, 72

---

[8] Following the Final Order, School District filed a Motion for Clarification, Correction, and Reconsideration of the Final Order. The parties determined, in a phone conference with the trial court, that the Final Order would be treated as final. School District filed a post-trial motion and withdrew the Motion for Clarification, Correction, and Reconsideration. The trial court denied School District's post-trial motion.

[9] Our review of a trial court order granting permanent injunctive relief is limited to whether the trial court committed an error of law. *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 n.8 (Pa. Cmwlth. 2012).

[10] PSTCA filed an amicus brief in support of Tax Collector. PSTCA argues the trial court's Final Order was correct as a matter of fact and law, arguing that School District's 2018 Resolution is "an unlawful attempt to replace the established legislative process of real estate tax collection." (PSTCA's Brief at 7.) PSTCA contends that the extent of a school district's involvement in the collection of taxes is setting a reasonable rate of compensation that should be premised upon the traditional and accepted services performed by tax collectors, which include customer service and the issuance of tax certifications.

P.S. § 5511.5b,[11] and to secure a bond for the amount of taxes to be collected. 72 P.S. §5511.4. Upon receipt of a duplicate, which is the listing of property valuations within the taxing district, tax collectors "shall within thirty days . . . notify every taxable whose name appears on such duplicate" of the amount of taxes due on the property and the date upon which it is due. Section 6 of the LTCL, 72 P.S. § 5511.6. Additionally, tax collectors must issue additional notices where a duplicate is issued following an interim assessment. Section 5.1 of the LTCL, 72 P.S. § 5511.5a.[12] Taxing districts pay the expense for postage and printing of these notices. Section 9 of the LTCL, 72 P.S. § 5511.9. Once tax collectors receive a tax payment, they shall furnish a receipt to the taxpayer, keep a record of the money collected, and provide a verified statement to the taxing district of the amount of taxes received, including discounts and penalties applied. Sections 14 and 25 of the LTCL, 72 P.S. §§ 5511.14, 5511.25. Tax collectors "shall maintain and have legal custody of tax collection records that are not in the custody of a taxing district." Section 4.3 of the LTCL, 72 P.S. § 5511.4c(a).[13] Each year, tax collectors must make a complete and sworn settlement of all the taxes collected in the prior year. Section 16 of the LTCL, 72 P.S. § 5511.26. The taxing districts set the compensation rate for tax collectors, subject to a statutory maximum. Section 34 of the LTCL, 72 P.S. § 5511.34. Finally, under Section 36.1 of the LTCL:

> When any taxing district or taxing authorities propose to either raise or reduce the compensation or salary for the office of an elected tax collector, such action shall be by ordinance or resolution, finally passed or adopted prior to the fifteenth day of February of the year of the municipal election.

---

[11] Added by the Act of October 30, 2017, P.L. 375.
[12] Added by the Act of December 20, 2020, P.L. 735.
[13] Added by the Act of July 7, 2006, P.L. 374.

72 P.S. § 5511.36a.

The controlling case law relied upon by the trial court and the parties interprets a tax collector's standing, duties of the elected office, and a reasonable compensation rate. Our Supreme Court explained the special rules governing tax collector standing in compensation challenges in *Myers v. School District of Newtown Township*, 153 A.2d 494 (Pa. 1959), where a tax collector challenged a school board resolution changing the manner of compensation calculation, resulting in a reduction in compensation. The school district passed the resolution, of which the tax collector was aware when the tax collector ran for office and was elected. After election, tax collector filed the compensation challenge. The school district asserted that the tax collector lacked standing, and the Supreme Court agreed. Noting that Section 36.1 of the LTCL[14] required resolutions changing compensation to be passed before the municipal election, the Supreme Court reasoned that this requirement was "to apprise candidates of the salary the winner would receive if elected, and thus enable candidates to withdraw their names from nomination and election if they believed the . . . compensation or salary was inadequate or unfair." *Myers*, 153 A.2d at 496. Allowing this tax collector, who ran for office with full knowledge of the salary, to proceed on his challenge was contrary to Section 36.1 of the LTCL and could set a

---

[14] At the time the Supreme Court decided *Myers*, Section 36.1 provided:

> When any taxing district or taxing authorities propose to either raise or reduce the compensation or salary for the office of an elected tax collector, such action shall be by ordinance or resolution, finally passed or adopted at least ten days prior to the last day fixed by law for candidates to withdraw their names from nomination previous to the day of the municipal election.

*Former* 72 P.S. § 511.36a.

precedent for other similar challenges by elected officials, the Supreme Court explained. *Id.* Accordingly, the tax collector did not have standing. *Id.*

Subsequently, this Court applied *Myers* and also analyzed a reasonable compensation challenge in *Yost*. There, incumbent township and borough tax collectors challenged the school district's resolutions establishing an $800 salary for the tax collector "with the [school d]istrict itself carrying out the necessary work load," such as verifying tax duplicates, mailing tax bills, collecting taxes, and depositing taxes into a bank lockbox. *Yost*, 397 A.2d at 454-55. The tax collectors challenged these resolutions prior to the election. We determined that "incumbent tax collectors intending to seek new terms in an election, the mechanics of which was to begin within weeks after the School Board action," had "a direct, substantial[,] and immediate interest in the[s]chool [b]oard's actions decimating the salaries." *Id.* at 455-56. We reasoned that "[u]nless an aspiring tax collector objects to the school board's salary action before running for the office," the aspiring tax collector "may never be in a position to do so." *Id.* at 456 (citing *Myers*, 153 A.2d at 494). Further, we rejected the school district's arguments that the incumbent tax collectors' alternative remedy "was simply to abstain from running for reelection," explaining that the implication of that argument "is that the power given to school boards to fix the salaries of tax collectors [would] not [be] subject to review by the courts" when "the courts may and should intervene . . . ." *Id.* at 456. We have reiterated since then the rule that a local tax collector's challenge to compensation must be filed prior to election. *See, e.g.*, *Baker*, 24 A.3d at 491; *McDaniel*, 921 A.2d at 1270.

In *Yost*, after establishing the tax collectors had standing, we looked to the validity of the resolutions. The common pleas court issued an order increasing

16

compensation and enjoining the school board from enforcing the school district's resolutions reducing tax collector compensation. Setting forth generally the myriad of statutory duties of a tax collector as detailed in the LTCL, we explained that the school board's resolutions were "[i]n direct contradiction of the statute" by providing that "the [s]chool [d]istrict, to the exclusion of the tax collector, [would] bill for and collect taxes," a bank would receive the taxes, and the school district would adjust tax duplicates. *Yost*, 397 A.2d at 457. Further, we reasoned, regardless of the good intention behind the school board's actions, the evidence demonstrated the new compensation rate was not a reflection of the school district's "opinion of a reasonable salary for the work the tax collector had been doing in the past," but as a plan to put the school district in control of tax collection. *Id.* We affirmed but modified the final order, concluding there were no findings of fact to support the trial court's decision to increase compensation from what it had been the year before. *Id.* at 457-58.

The Supreme Court followed similar reasoning in *Telly*. In that case, the boards of certain school districts passed resolutions reducing tax collector compensation rates by 69% to $0.70 per tax bill in the hopes of reducing tax collection costs by utilizing a bank lockbox. Various tax collectors, who were candidates for reelection, filed complaints for injunctive relief, seeking to set aside the resolutions. *Telly*, 53 A.3d at 707. The court of common pleas heard testimony from 12 tax collectors regarding the duties of the job and the allocation of time spent doing those duties. Per their testimony, the tax collectors spent their time doing tax collection, accounting and reconciliation of reports, and customer service. The court of common pleas ultimately concluded the school districts' new standard for calculating compensation was arbitrary, rendering the resolutions void. This Court

17

disagreed, determining that the school districts did not abuse their discretion in basing compensation rates on the use of a lockbox system so long as the tax collectors "are not deprived of the option to collect taxes at the new rates." *Telly*, 53 A.3d at 713 (quoting *Telly v. Pennridge Sch. Dist. Bd. of Sch. Directors*, 995 A.2d 898, 906 (Pa. Cmwlth. 2010)). The Supreme Court reversed, disagreeing with this Court's focus on whether the new rate deprived tax collectors of the option to collect, favoring instead a broader inquiry like the one used in *Yost*.

The Supreme Court concluded the compensation rates adopted by the school districts "were so low as to deprive the [t]ax [c]ollectors of the ability to perform the duties of their elected positions, rendering the [r]esolutions void." *Id.* at 718-19. The Supreme Court reasoned that the court of common pleas had "considered the [t]ax [c]ollectors' duties, time spent on those duties, and the impact of the new compensation rates on the [t]ax [c]ollectors' ability to fulfill their responsibilities." *Id.* at 719. For example, the court of common pleas found significant that one resolution would not allow tax collectors to provide tax certifications, file liens for overdue payments, or provide customer service. *Id.* Because it was "beyond the [school] boards' power to transform the local tax collection system by reducing compensation levels," in a way that deprived tax collectors of fulfilling their duties, the Supreme Court affirmed the court of common pleas. *Id.* Justice Eakin concurred, agreeing that the rates adopted by the school districts "were so low as to deprive the tax collectors of the ability to perform their basic duties," but positing that tax collectors should not be allowed "to unilaterally expand their role from tax collector to customer service representative and expect those self-imposed duties to be the subject of mandatory compensation." *Id.* (Eakin, J., concurring).

18

### III. Discussion

With an understanding of the controlling law, we turn to the parties' arguments and our analysis.

#### A. *Whether the Trial Court Erred in Concluding Tax Collector has Standing.*

##### 1. Parties' Arguments

School District asserts the trial court erred in concluding Tax Collector has standing, arguing as follows. Pursuant to the Supreme Court's decision in *Pittsburgh Palisades*, a party is immediately aggrieved only if the potential harm is not "wholly contingent on future events." (School District's Brief (Br.) at 15 (quoting *Pittsburgh Palisades*, 888 A.2d at 660).) Any harm that Tax Collector may suffer from a $0.15 compensation rate is contingent on future events, as Tax Collector has not obtained the requisite bond and, therefore, is still enjoined from collecting School District's taxes. Further, the trial court's reliance upon this Court's decision in *Yost* and the Supreme Court's decision in *Myers* was misplaced. Although the rule from those cases is that a future tax collector has standing only when suit is filed prior to election, they were decided before the "wholly contingent on future events" standard was set forth in *Pittsburgh Palisades*. Moreover, the cases establishing that rule were decided after the candidates were elected and collecting taxes, something Tax Collector here cannot do because she has not obtained a bond. A compensation challenge must be filed before election in order to protect the electorate from fraud. Although the trial court acknowledged that the timing of Tax Collector's first complaint on the day before her election "deprived the electorate of the opportunity to make an informed decision," about retaining her, it nonetheless determined she had standing. (School District's Br. at 21 (quoting FOF ¶ 8).) While this is a case

with unique facts, and there is no brightline rule for how many days before an election a suit must be filed, the trial court's reasoning is inconsistent with the intent behind the rule. Given the timing of Tax Collector's first complaint, School District asks this Court to reverse the trial court on the basis that Tax Collector lacks standing under the doctrine of clean hands or by "fashion[ing] a rule that a candidate must both file and serve a compensation challenge 'reasonably in advance' of the election." (*Id.* at 24 (emphasis omitted).)

Tax Collector responds that the trial court properly determined she has standing, arguing as follows. Courts have long held, prior to *Pittsburgh Palisades*, that there is an immediacy warranting standing where interests are not wholly contingent upon future events. As the Supreme Court and this Court have confirmed in recent years, standing requires "an expansive . . . inquiry," and the *Pittsburgh Palisades* analysis is not applicable where there are inapposite facts. (Tax Collector's Br. at 18-19 (citing *Johnson v. Am. Standard*, 8 A.3d 318 (Pa. 2010); *Pilchesky v. Redevelopment Auth. of Scranton*, 941 A.2d 762 (Pa. Cmwlth. 2008)).) The brightline rule that a tax collector must file suit challenging compensation prior to election is strongly rooted in case law and Tax Collector followed this rule when she filed the first complaint. The trial court correctly applied that case law and the legal standard for a standing analysis to determine that Tax Collector has standing. Tax Collector, at all times relevant, has been the sole tax collector for the Township and, therefore, is the best party to pursue her claim. Tax Collector's holding of the elected position is not contingent upon future events and this Court should affirm the trial court.

School District replies that, regardless of whether the zone of interests analysis or the *Pittsburgh Palisades* standard is applied, Tax Collector lacks standing

20

because she has never collected taxes for School District, and currently is not doing so.

2. Analysis

"The concept of standing mandates that [a] party must have substantial, direct, and immediate interest in the outcome of the litigation." *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1215 (Pa. Cmwlth. 2018). Substantial interest is that which "surpasses the common interest of all citizens in procuring obedience to the law." *Id.* A direct interest exists where there is "a causal connection between the asserted violation and the harm complained of," and the interest is immediate if that "causal connection is not remote or speculative." *Id.*

School District, arguing that Tax Collector's interest is contingent upon future events, challenges the trial court's conclusion that Tax Collector's interest is immediate. In advancing this argument, School District relies upon *Pittsburgh Palisades*. In that case, the petitioners, corporations that had acquired property that they planned to develop for operating a gaming facility, challenged as unconstitutional provisions of the Gaming Act that provided for the return of slot machine license fees to license holders. The respondents challenged the petitioners' standing because the petitioners had not yet applied for or received a slot machine license. The Supreme Court concluded that the petitioners did not have standing because their interests were not substantial, direct, or immediate. *Pittsburgh Palisades*, 888 A.2d at 660-61. With regard to the immediacy of the interests, the Supreme Court explained that "at this juncture[, the petitioners] have not been issued a gaming license"; therefore, "any possible harm to [the p]etitioners is wholly contingent on future events," and so they lacked standing. *Id.* at 660.

21

Here, while Tax Collector is not currently collecting taxes for School District, it is her statutory right to do so. 53 P.S. § 55801-B. Further, this is a right which School District has acknowledged, noting in its brief that there is no longer a dispute as to whether Tax Collector has the sole duty and right to collect these taxes. (School District's Br. at 25.) Unlike the petitioners in *Pittsburgh Palisades*, that challenged the statutory provisions for the return of a slot machine license fee before applying and possibly receiving a slot machine license where the issuance of the license was uncertain, Tax Collector is the elected tax collector. While the petitioners in *Pittsburgh Palisades* might never receive a slot machine license, at all times relevant, Tax Collector held the elected office conferring upon her the statutory right and duty to collect these taxes and to receive reasonable compensation for it. Although she does not currently have the necessary bond, there is no evidence that Tax Collector cannot acquire one after this litigation ends, as she does have the necessary bonds for collecting Township and county taxes.[15] Therefore, her interest is not remote or speculative. As the trial court explained, Tax Collector's standing comes not from a present ability to collect the taxes but from her statutory right to do so.

To the extent that the trial court premised its analysis on the zone of interests, this does not constitute an error of law. After *Pittsburgh Palisades*, our Supreme Court acknowledged in *Johnson* that precedent is "arguably unclear as to when

_____

[15] The trial court explained in its opinion accompanying the Summary Judgment Order, as well as in its opinion pursuant to Rule 1925(a), that the exhibits attached to School District's petition for emergency injunctive relief demonstrated Tax Collector sought to obtain a bond but was stalled by School District pending passage of the 2018 Resolution and ultimately denied on the basis of the current litigation. (*See* Summary Judgment Op. at 4-5 n.5; Rule 1925(a) Op. at 4-5 n.5, 13-14.) School District challenged this trial court finding in its Rule 1925(b) Statement but does not argue it in its brief; thus, it is waived. *Rapid Pallet v. Unemployment Comp. Bd. of Review*, 707 A.2d 636, 638 (Pa. Cmwlth. 1998).

courts must examine the relevant zone of interests to determine whether a party has met the immediacy prong of aggrievability." *Johnson*, 8 A.3d at 333. The Supreme Court explained:

> When the standards for substantiality, directness, and immediacy are readily met, the inquiry into aggrievability, and therefore standing, ends. Should, however, a party's immediate interest not be apparent, a zone of interests analysis may (and should) be employed to assist a court in determining whether a party has been sufficiently aggrieved . . . .

*Id.* The trial court did not err or abuse its discretion in determining that Tax Collector's interest is not "wholly contingent on future events," like the interests of the petitioners in *Pittsburgh Palisades*. Thus, the trial court's analysis of the immediacy prong by applying the zone of interests analysis and the *Pittsburgh Palisades* precedent was not an error of law.

School District also argues that the trial court, relying upon *Myers* and *Yost*, erred in concluding Tax Collector had standing when she filed her first complaint one day before the general election. We conclude the trial court properly applied the cases that specifically examine the standing of elected tax collectors. In both *Myers* and *Yost*, incumbent tax collectors challenged the school districts' resolutions changing the compensation tax collectors would receive. In *Myers*, the tax collector knew of the resolution changing the compensation, ran for office, was elected, and **then** filed suit challenging the compensation. 153 A.2d at 495. Under these circumstances, the Court concluded there was no standing. *Id.* at 496. In *Yost*, however, the tax collectors filed their challenges **prior** to the election, and we concluded they had standing. Here, we agree with the trial court that this case is more akin to *Yost* than *Myers*. Based upon our precedent, Tax Collector was required to file her challenge before the election, which she did. While the timing

23

of the filing of Tax Collector's first complaint was close to the date of the election, it was still filed in advance thereof. Accordingly, we agree with the trial court that Tax Collector has standing.

> B. *Whether the Trial Court Erred in Concluding Tax Collector has a Viable Cause of Action and Ordering School District to Adopt a Reasonable Compensation Rate.*

### 1. Parties' Arguments

School District contends Tax Collector has not "raise[d] a valid claim for mandatory injunctive relief supported by a viable cause of action," arguing as follows. (School District's Br. at 25.) Tax Collector's first complaint sought declaratory and injunctive relief as to her right to collect School District's taxes and a reasonable rate of compensation. After the trial court's order of June 8, 2018, the only remaining issue was compensation. The trial court's Final Order directing School District to set a reasonable rate of compensation was a form of mandatory injunction, which "cannot be awarded for a declaratory relief claim." (*Id.* at 27.) The trial court erred in concluding that tax collectors may challenge compensation through causes of action sounding in injunction.

School District further asserts that the trial court erred as a matter of law in ordering School District to adopt a new compensation rate, as this was contrary to the LTCL and Article III, Section 27 of the Pennsylvania Constitution, which prohibits increasing or decreasing a public official's salary during the term of office.[16] Tax Collector did not raise a challenge to School District's compensation rate prior to February 15, 2017, before her most recent election to office. By the

---

[16] PA. CONST. art. III, § 27. Specifically, this provision states "[n]o law shall extend the term of public officer, or increase or diminish his salary or emoluments, after his election or appointment." *Id.*

24

time School District was served with the first complaint, Tax Collector had been elected and, pursuant to the LTCL and the Pennsylvania Constitution, School District could not alter the rate of compensation. This is unlike *Yost*, where the school board was enjoined from enforcing a new rate, as the trial court here directed School District to set a rate. Pursuant to Section 36.1, School District can only establish a new rate of compensation before February 15, 2021, prior to the municipal election, which would become effective in 2022.

Tax Collector responds that she raised a viable cause of action and the trial court fashioned appropriate relief, arguing as follows. Tax Collector sought an order from the trial court ordering School District to "pay her a reasonable rate of compensation commensurate with the duties of her office." (Tax Collector's Br. at 30.) Analyzing the testimony provided, the trial court appropriately determined that there was no current compensation rate in place and ordered School District to set a reasonable compensation rate, which is appropriate relief grounded in case law. Contrary to School District's argument otherwise, only a court is able to intervene to ensure a school district pays a reasonable rate of compensation. Although School District attempts to distinguish this case from those where the districts were ordered to revert to the previous compensation, the trial court's findings here demonstrate that there was no valid prior compensation rate to which School District could revert. If, as School District asserts, a trial court could not analyze these challenges and compel a school district to increase compensation rates, those rates would never be subject to review. If a court has sufficient facts of records, it "is not restrained from ordering an increase in compensation . . . ." (*Id.* at 37.) Finally, the requirements of Article III, Section 27 of the Pennsylvania Constitution are protected here by the LTCL's deadline for setting compensation rates in an election year, by the

requirement for when a party must file suit, and by the reasonableness standard enumerated in *Telly*. Therefore, this Court should affirm the trial court.

School District replies that while a trial court "can arguably direct a school district to set a new compensation rate by a date certain," that directive can pertain only to the next term of office per Article III, Section 27. (School District's Reply Br. at 12.)

2. Analysis

In *Telly*, *Myers*, and *Yost*, the tax collectors sought declaratory and injunctive relief to prohibit school districts from enforcing a new rate that effectively decreased compensation. Here, Tax Collector sought declaratory and injunctive relief in the first complaint as to her sole statutory right and duty to collect taxes and to receive the reasonable compensation she is owed for performing that duty. The relief she sought was proper and consistent with our case law as to the cause of action for challenging compensation. In granting Tax Collector's relief, the trial court found that School District had never validly adopted a rate of compensation and, even if it had, that rate was null and void as being too low to be reasonable compensation because it deprived Tax Collector of the ability to perform the duties of her elected office. School District does not challenge that finding on appeal. In light of that finding, the trial court, in declaring Tax Collector had the right and duty to collect School District's taxes, properly ordered School District to set a reasonable compensation for the duty that Tax Collector will now be performing.

Although School District characterizes the Final Order as directing School District to increase Tax Collector's compensation, in contravention of the LTCL and the Pennsylvania Constitution, we disagree. Our Supreme Court has rejected similar arguments in the past. In *McKinley v. School District of Luzerne Township*, 118

A.2d 137, 139 (Pa. 1955), a group of taxpayers challenged a resolution setting the compensation rate for the local tax collector. The trial court issued a decree in March finding the resolution was null and void and issued an order reducing the rate of compensation. The tax collector appealed and argued, among other things, that the trial court lacked the authority to alter the compensation rate after the election and qualification of the tax collector. The Supreme Court found that the limitations of Section 36.1 apply to school boards and not courts. *Id.* The Supreme Court also found that the trial court's decree did not violate the Pennsylvania Constitution's prohibition against increasing or decreasing a public officer's salary after election. *Id.* The Supreme Court explained former Article III, Section 13, which has since been renumbered as Article III Section 27 "applies only to a **law**, which means an act of the legislature, and not an action by any municipal or local authority." *Id.* (emphasis in original). Accordingly, where, as here, a trial court determines that a compensation rate is too low to allow a tax collector to perform duties of the elected office, and after "the fifteenth day of February of the year of the municipal election," 72 P.S. § 5511.36a, or after the election orders the taxing authority to set a new rate, the trial court's order does not violate the LTCL or Article III, Section 27 of the Pennsylvania Constitution. The trial court's Final Order amounts to ordering School District to do what it is required to do – provide tax collectors with reasonable compensation. *See* 72 P.S. § 5511.34. The trial court had the authority to order School District to pass a new compensation rate even though it will necessarily be higher in order to achieve a reasonable rate in compliance with the requirement that the compensation not deprive Tax Collector of performing the duties of the elected office. Accordingly, the trial court did not commit an error of law or abuse its

27

discretion in concluding Tax Collector had a viable cause of action and in ordering School District to set a compensation rate.

### C. Whether the Trial Court Erred in Invalidating Section 9 of the 2018 Resolution.

#### 1. Parties' Arguments

School District makes the following arguments in contending the trial court erred when it invalidated Section 9 of the 2018 Resolution. In School District's view, the trial court determined Tax Collector has an "'inherent right' to compel an increase in her compensation by dictating whether she will provide services that are not required by statute," including customer service and tax certifications. (School District's Br. at 36 (emphasis omitted).) There is no statutory or regulatory authority or case law to support this proposition. As Justice Eakin opined in his concurring opinion in *Telly*, tax collectors should not be permitted to expand their roles to customer service representatives. School District asserts there is no express or implied authority for tax collectors to determine that customer service is a duty warranting an increase in compensation. Adopting the trial court's rationale allows tax collectors to compel increases in compensation and interferes with a school district's express authority to budget school funds. A tax collector's duties are limited to those enumerated in the LTCL, which do not include customer service. (*Id.* at 39 (citing *Current Status, Inc. v. Hykel*, 778 A.2d 781 (Pa. Cmwlth. 2001)).) School District has been providing customer service since at least 1997, as the trial court acknowledged, and it can continue to do so while Tax Collector collects the taxes. The trial court erred in giving weight to Tax Collector's testimony because Tax Collector is presently enjoined from collecting School District's taxes and, therefore, providing customer service. Whether a tax collector can compel an

increase in compensation is a question of law that should not be determined on the basis of Tax Collector's "self-serving testimony"; thus, the trial court's Final Order should be reversed. (*Id.* at 41.)

Tax Collector responds that School District's argument "is an unnecessarily inflammatory spin on the relief sought by [Tax Collector] in this matter." (Tax Collector's Br. at 37-38.) Whether customer service is an inherent right and duty of tax collectors upon which the 2018 Resolution infringes is separate from the question of compensation. If customer service is an inherent tax collector duty, then Tax Collector cannot opt out of it. If it is an inherent duty, then Tax Collector has a right to reasonable compensation for that service, as explained in *Telly*. Based upon the LTCL, governing precedent, and the evidence presented to the trial court, customer service is an inherent duty of the elected office. As the Supreme Court made clear in *Telly*, "the duties of the office of tax collector are not limited to those specifically set forth by statute." (*Id.* at 40.) Justice Eakin's concurring opinion to the contrary is not controlling. The LTCL requires Tax Collector to collect taxes, turn those taxes over to School District, hold office hours, and settle duplicates. The 2018 Resolution requires Tax Collector to follow up on tax bills to ensure they are paid. Tax Collector cannot carry out these duties if she is unable to provide customer service. The trial court found Tax Collector and PSTCA President's testimony on this point "compelling and credible," the School District did not rebut that testimony, and this Court is bound by the trial court's credibility determinations, which are supported by the record. Tax Collector does not "choos[e] to perform customer service to make more money, but because [Tax Collector] is mandated by virtue of her elected office[] to perform the duty." (*Id.* at 45.) Therefore, the trial court properly invalidated Section 9 of the 2018 Resolution.

29

School District replies that the Supreme Court's decision in *Telly* merely "noted the trial court's concern" that the school district's tax collection plan did not include customer service, but did not hold that customer service is a duty of the elected office. (School District's Reply Br. at 16 (emphasis omitted).)

2. Analysis

Section 9 of the 2018 Resolution states "[c]onsistent with the School District's long-standing practice and the fact that [t]he [LTCL] does not require a tax collector to provide customer service, the tax collector shall direct all taxpayer inquiries concerning School District tax to the School District's Business Office." (2018 Resolution ¶ 9, R.R. at 133a.) The LTCL does not explicitly state that providing customer service is a tax collector's duty. However, in *Yost*, we determined that a resolution reducing compensation rate and leaving most tax collector duties to the school district was not a reflection of the school district's "opinion of a reasonable salary for the work the tax collector had been doing in the past," but as a plan to put the school district in control of tax collection. *Yost*, 397 A.2d at 457. Moreover, in *Telly*, the Supreme Court agreed with a court of common pleas' decision considering a compensation rate too low and resolutions invalid where they deprived tax collectors of the ability to perform duties that were considered essential even if not explicitly statutory. Specifically, the Supreme Court acknowledged the common pleas court's findings about a tax collector's duties, including providing customer service and tax certifications, and agreed that a compensation of $0.70 per bill was so low as to deprive tax collectors of performing such duties. In light of *Telly*, we cannot agree with School District that a reasonable compensation determination should be premised only upon duties expressly enumerated in the LTCL.

30

Like the courts of common pleas in *Telly* and *Yost*, the trial court here made extensive factual findings, supported by the record, as to the importance of customer service related activities for local tax collectors. The trial court found that Tax Collector provides customer service to taxpayers already, spending approximately 55% of her time already doing as much. (FOF ¶ 33.) Further, the trial court found that Tax Collector, in performing customer service, "answer[s] to the people," in order "to make them feel comfortable about what [the taxing authorities are] doing with their taxes," and to answer questions and explain tax bills, which is "an integral part of [a] tax collector's job." (*Id.* ¶¶ 44, 74 (alterations in original).) Therefore, the trial court determined that customer service is "inextricably intertwined with the express statutory duties of the office set forth in the LTCL," and Section 9 of the 2018 Resolution infringes upon this. (COL ¶¶ 38, 40.)

As our Supreme Court determined in *Telly*, where a trial court has made such supported findings that customer service is a duty commensurate with the office, tax collectors' compensation should not be "so low as to deprive the [t]ax [c]ollectors of the ability to perform the duties of their elected positions . . . ." 53 A.3d at 718-19. School District contends the trial court concluded Tax Collector can compel an increase in compensation by providing customer service. We disagree with this characterization of the trial court's conclusions. The trial court's conclusion that the provision of customer service is a duty intertwined with the office was the basis for invalidating Section 9, and School District must consider that this is a duty commensurate with the office when it sets a compensation rate. Following the principles set forth in *Telly* and *Yost*, and in consideration of the findings of fact supported by the record, we conclude the trial court did not err or abuse its discretion in concluding that customer service is "inextricably intertwined with the express

31

statutory duties of the office set forth in the LTCL," and invalidating Section 9. (COL ¶¶ 38, 40.)

### D. Whether the Trial Court Erred in Invalidating Section 22 of the 2018 Resolution.

#### 1. Parties' Arguments

School District asserts the trial court erred in invalidating Section 22 of the 2018 Resolution, governing tax certifications, arguing as follows. Tax Collector should not be entitled to compel increased compensation by determining that issuance of tax certifications is a duty of her elected office. Tax Collector and PSTCA President's self-serving testimony does not indicate that School District cannot continue to issue its own tax certifications. The LTCL is silent regarding tax collectors' requirements to issue tax certifications and, to the extent it requires tax collectors to maintain data, tax certifications are not requests for the data but are lien releases from the lienholder – in this case, School District. Moreover, the Supreme Court's decision in *Telly* should not be read so broadly as to endorse the issuance of tax certifications as a duty of the office. School District asks us to reverse the trial court's Final Order.

Tax Collector responds that School District's argument on this point "fail[s] for the same reasons its arguments with respect to customer service fail," arguing as follows. (Tax Collector's Br. at 45.) Again, there is no increase in compensation if the duty to issue tax certifications is an inherent duty. As the Supreme Court acknowledged in *Telly*, issuance of tax certifications is "a duty commensurate with the elected office of tax collector." (*Id.* at 46.) School District's conflation of tax certifications to liens is misplaced, as School District's authority to release a lien for unpaid taxes does not have any bearing on the question of whether issuing tax

32

certifications is an inherent duty of the office of tax collector. Under the LTCL, Tax Collector is solely responsible for the collection and for maintenance of tax collection records and data, and for providing verified statements of taxes collected. A necessary implication of those enumerated responsibilities is a duty to provide data in the form of tax certifications, as explained in Tax Collector's and PSTCA President's credible testimony. Because Tax Collector is the custodian of tax collection records and is responsible for ensuring taxes are timely paid, the trial court correctly concluded that Section 22 of the 2018 Resolution is invalid.

School District replies that it has the power to issue tax certifications and the trial court should not have taken away that power, because School District "owns all liens resulting from imposition of [School] District['s] tax." (School District's Reply Br. at 22.)

2. Analysis

Section 22 of the 2018 Resolution provides:

> For the following reasons, the School District, not the tax collector will provide certifications as to taxes due or paid: (a) the School District, not the tax collector, is the ultimate recipient of the tax and is thus the proper party to issue certifications; (b) the tax collector must use software provided by and fully-accessible to the School District to maintain a real time record of tax receipts . . . .; (c) the tax collector must deposit all tax on the day of receipt for immediate sweep into a School District account . . . ; and (d) nothing in the [LTCL] states that providing certifications is a statutory obligation of elected tax collectors.

(2018 Resolution ¶ 22, R.R. at 136a.) While the LTCL does not use the term "tax certifications," it does state that a tax collector is responsible for the collection and maintenance of tax collection records and data, and providing verified statements of

33

taxes collected. We agree that a necessary implication of those enumerated responsibilities is a duty to provide data in the form of tax certifications.

Here, the trial court made factual findings, supported by testimony of record, that the issuance of tax certifications is a duty of the elected office. Specifically, the trial court found Tax Collector issues tax certifications for the county and the Township, a duty of her elected office that she is "uniquely situated" to perform. (FOF ¶¶ 57-59.) The trial court also found that PSTCA President was "unaware of any tax collector who collects taxes for a given taxing district but does not issue tax certifications for that district," as issuance of tax certifications is an integral duty of a tax collector. (*Id.* ¶ 76.) These findings support the trial court's conclusion that Section 22 of the 2018 Resolution prohibits Tax Collector from issuing tax certifications, which "is a duty commensurate with the responsibilities of the entity collecting taxes." (COL ¶¶ 49-50.) Although School District asserts that it owns the liens resulting from the issuance of its taxes and we acknowledge that School District issued tax certifications for many years, the question before the trial court was not which entity is better suited to issue tax certifications, but whether that activity was a duty commensurate with the elected office of tax collector. The trial court found that it is. Moreover, the trial court specifically provided that its findings of fact and conclusions of law did not "preclude[] the [School] District from issuing tax certifications for those years it collected taxes and the elected tax collector issuing tax certifications for those years the tax collector collects taxes." (*Id.* ¶ 55.)

The trial court did not, as School District suggests, allow Tax Collector to dictate the duties of her office and compel an increase in compensation for those duties. Tax Collector sought to solidify her right to collect School District's taxes, invalidate provisions of the 2018 Resolution interfering with her provision of duties

commensurate with her office, and receive reasonable compensation. The trial court agreed based upon findings supported by the record. Accordingly, the trial court did not abuse its discretion or commit an error of law in finding issuance of tax certification is a duty of the office and invalidating Section 22 of the 2018 Resolution.

## IV. Conclusion

Because Tax Collector has an immediate interest in this litigation and filed her complaint prior to her election to office, the trial court properly concluded Tax Collector had standing. Further Tax Collector states a viable cause of action, and the trial court did not impermissibly order School District to increase Tax Collector's compensation. Finally, the trial court's findings that the provision of customer service and issuance of tax certifications is an inherent duty of the elected office are supported by the record and consistent with *Telly*. Therefore, the trial court did not err or abuse its discretion in invalidating Sections 9 and 22 of the 2018 Resolution. Accordingly, we affirm.

 

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia J. Kabel :
:
          v. : No. 1037 C.D. 2019
:
Manheim Township School District, :
               Appellant :

# **O R D E R**

**NOW**, July 6, 2020, the Order of the Court of Common Pleas of Lancaster County is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge